THE GEISER MANUFACTURING COMPANY, Appellant, v. HENRY KROGMAN AND FERDINAND KROGMAN.

**Foreclosure and Sale of Chattels:** STIPULATIONS AS TO DAMAGES AND NOTICE: *Law by contract.* Where a chattel mortgage provides that the mortgagee may take possession and sell the property at public sale without any liability for damages, the mortgagee is not liable, in the absence of bad faith, at least, for selling the property at an advertised public sale, which was not in accordance with Code, sections 4275, 4277, prescribing the methods to be pursued in the sale of mortgage chattels, the provisions of the mortgage constituting a waiver of strict compliance with the statute, and a judgment for the defendant for damages for such sale was erroneous.

BURDEN OF PROOF. When a chattel mortgage authorizes the mortgagee to take possession and sell the mortgaged property at a public sale whenever he deems himself insecure, and the property is so seized and sold, the court should instruct, in an action between the mortgagor and mortgagee, that the burden is on the mortgagor to show that the sale was not made in good faith, and it is error to require the mortgagee to prove, in the first instance, that he deemed himself unsafe when he foreclosed.    This is especially so where no issue was made challenging the maturity of the mortgage debt.

**Appeal:** OVERRULED DEMURRER: *Pleading over.* While overruling a demurrer to an answer is not an adjudication and the matters covered by such ruling may thereafter be presented in other ways, yet when, after such ruling, the party interposing the demurrer pleads over he waives the error in the ruling and cannot base an assignment of error upon it.

REVIEW OF INSTRUCTIONS. Where a requested instruction which was refused is abstractly correct, but refers to evidence which is not in the record, it will not be considered on appeal.

ASSIGNMENTS.   Assignments of error based on evidence which is not in the record cannot be considered.

SAME:  *How specific.*  Under Code, section 4136, requiring an assignment of error to clearly indicate the very error complained of, and requiring the points in a demurrer, motion, instructions or rulings on which the party relies to be separately stated, an assignment that "the court erred in overruling plaintiff's motion in arrest of judgment and for a new trial, and the 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th, and 10th grounds of such motion, in that the verdict is contrary to law, to the evidence; damages are waived; the instructions are wrong; that the verdict is the result of prejudice, and plaintiff's motion to direct a verdict should have been sustained,"—will not be considered, since it is too general to present any error for review.

*Appeal from Osceola District Court.*—HON. F. R. GAYNOR, Judge.

SATURDAY, MAY 19, 1900.

ACTION on three promissory notes made and executed to plaintiff by defendants Krogman.  Defendants admit the making of the notes, but plead an offset and counterclaim growing out of the sale of certain property under a mortgage given to secure the notes.  There was a trial to a jury, resulting in a verdict and judgment for defendants and plaintiff appeals.—*Reversed.*

*John McLennan* and *T. D. Hastie* for appellant.

*Milt H. Allen* for appellees.

DEEMER, J.—On motion of appellees the evidence has been stricken from the record and we may only consider such of the assignments of error as arise upon the pleadings, the instructions, the verdict, and the judgment.  It appears from the pleadings that on the fifth day of January the defendants made and executed to plaintiff their three promissory notes in writing for the sum of four hundred and ninety-one dollars and sixty-six cents each, due, one December 1, 1897,

one December 1, 1898, and one December 1, 1899, each bearing seven per cent. interest. To secure these notes the defendant also executed a chattel mortgage on a traction engine and a separator that contained these, among other provisions: "Until default in payment of the above notes, * * * said mortgagor may remain in possession of said * * * chattels, * * * but, if such default be made, or if said mortgagee, * * * with or without apparent cause, feel insecure, then the said mortgagee shall have the right to declare all the above notes due, and may, without suit, take possession of the * * * chattels, * * * and sell the same at public sale without any liability for real or supposed damages; and at such sale the Geiser Mfg. Co. may become the purchaser, and said mortgagee may retain the amount of said note or notes and all the expenses, * * * and apply net proceeds as mortgagee may elect, and pay the surplus to said mortgagors." June 25, 1897, plaintiff took possession of the mortgaged property, and sold the same at public sale for the sum of eight hundred dollars, it being the purchaser. From the amount of the bid it deducted the sum of thirty-five dollars, and credited the balance on the three notes hitherto mentioned. Defendants filed an answer and counterclaim consisting of six divisions. The first was an admission of certain facts recited in the petition. The second was a claim that the amount charged as expense, to-wit, thirty-five dollars, was exorbitant, and that five dollars was a reasonable price. The third charges that when plaintiff took possession of and sold the mortgaged property nothing was due on the notes, and that plaintiff did not feel itself insecure, and had no reason for declaring the indebtedness due; that in taking possession of and selling the property plaintiff acted maliciously, and with intent to wrong defendants, and that by reason of the said sale defendants were damaged in the sum of five hundred dollars in being deprived of the use of the machine; and they asked the further sum of one thousand dollars.

as exemplary damages. In the fifth division they pleaded as a separate defense that plaintiff, in selling the property under the mortgage, bid in the same at a wholly inadequate price, and wrongfully and fraudulently and with intent to cheat took no steps to procure bidders, or to procure a fair price for the property, and by reason thereof damaged defendants in the sum of one thousand one hundred dollars. In the fifth division they alleged that prior to the execution of the notes in suit defendant executed other notes to plaintiff for the purchase price of the separator included in the mortgage, and they asked that plaintiff be required to produce the notes in order that the damages awarded them on their counterclaims might be applied on said notes, and they asked that, after allowing the amount claimed, they have judgment for the sum of one thousand two hundred dollars. A demurrer to these divisions of the answer was filed by the plaintiff, but the same was overruled, and thereafter defendants added a sixth division to their counterclaim, in which they charged by way of further counterclaim that at the time plaintiff took possession of and sold the property no part of the debt was due, and plaintiff had no reason for believing itself insecure; that in taking possession of and selling the property plaintiff acted maliciously, and with intent to cheat, wrong, and defraud the defendants; that it sold the property to itself at an inadequate price, and took no steps to procure bidders, or to secure a sale at a fair price; that, though there were no bidders aside from itself at the sale, it failed to postpone the sale, and wrongfully and fraudulently sold the property for an inadequate price; that, after becoming a purchaser at its own sale, it resold the property for about one thousand nine hundred dollars, and thereby obtained a profit of about one thousand one hundred dollars, for which sum they asked judgment. By subsequent pleading defendants amended division 3 by stating that plaintiff neglected to give proper notice of sale of the mortgaged property, and failed to conduct the sale as required by law, in that they did not

serve notice on the mortgagors, failed to have the property appraised, and failed to post notices of sale. They also amended the fourth division of their answer by reciting the same facts, and charged that failure to give notice, etc., was in pursuance of the plaintiff's wrongful and malicious intent. They also amended the sixth division of their answer by reciting the same facts as set forth in the amendment to the fourth division. The prayer remained the same. Plaintiff then demurred to the sixth division of the answer and counterclaim, and to the amendment to which we have last referred, but the demurrer was also overruled. Thereafter plaintiff filed a reply denying all the material allegations of the different divisions of the answer; further pleading that the mortgaged property was taken by an agent under specific instructions to take the property; and that if he (the agent) acted maliciously, or wantonly injured defendants, it was beyond the scope of his employment, and plaintiff is not bound by his acts. It also denied malice, and pleaded advice of counsel, and that, when the defendant Henry Krogman purchased the machinery, he was the owner of one hundred and sixty acres of land, that he afterwards sold to his wife for the purpose of defrauding plaintiff. It also pleaded an estoppel that need not be further noticed. On these issues the case was tried to a jury, resulting in the verdict hitherto mentioned.

It will be noticed that each affirmative defense or cause of action in the counterclaim was stated in a distinct division of the answer, and purported to be sufficient in itself. This was as the statute requires, and we refer to the matter at this time in order that what follows may be better understood. By pleading over after the ruling on its demurrer, plaintiff waived the error, if any. *Frum v. Keeney,* 109 Iowa, 393. The rulings did not constitute an adjudication, however, and the same questions may be presented in other ways. See same case. The assignments of error in the overruling of the demurrer cannot be considered.

The fourth, fifth, sixth, eighth, ninth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth assignments cannot be considered, for the reason that they each and all depend on the evidence, and it is not in the record.

The eighth relates to an instruction asked by plaintiff, that was refused, bearing on the question of malice. Abstractly considered, the instruction is correct. But it makes reference to the evidence, and we cannot determine its correctness without having that evidence before us.

The tenth reads as follows: "The court erred in overruling plaintiff's motion in arrest of judgment and for a new trial, and in overruling the 1st, 2d, 3d, 4th, 5th, 7th, 8th, 9th, and 10th grounds of said motion, in that the verdict is contrary to law, to the evidence; damages are waived; the instructions of the court are wrong; the verdict is the result of prejudice, and plaintiff's motion to direct a verdict should have been sustained." The statute (Code, section 4136) provides, in substance, that an assignment of error must clearly and specifically indicate the very error complained of, and, among several points made in a demurrer, motion, instructions or rulings the one or these relied upon must be separately stated. Under the statute, as heretofore construed by this court, this assignment is not sufficiently specific. See *Calkins v. Railway Co.,* 92 Iowa, 714; *Morris v. Railroad Co.,* 45 Iowa, 29.

The seventh assignment of error calls in question the correctness of an instruction asked by plaintiff to the effect that, as the defendants agreed in their mortgage to waive all damages, both real and supposed, for or by reason of a foreclosure thereof, they were not entitled to recover. Of this more hereafter. The eleventh challenges two instructions given by the court to the effect that plaintiff was liable for conversion of the property because it failed to take steps required by sections 4275, 4277, of the Code, relating to

the foreclosure of chattel mortgages; for the reason that the mortgage provides for the sale of property without notice, and for the further reason that the parties agreed that defendant should not claim damages.    The twelfth assignment challenges certain instructions wherein the jury was directed to determine whether or not the notes sued on were due, and also to determine whether or not plaintiff did feel itself insecure.    These assignments present the only questions for determination, although the arguments have covered a very much broader field.    We have then, first, the validity and effect of the stipulations found in the mortgage, providing that the mortgagee might take possession and sell the property at public sale "without any liability for real or supposed damages."    From the allegations of the pleadings there is no doubt that the sale was public, and that advertisement thereof was given; and there is also no question but that the sale was not made in accordance with the statute.    But that statute, in effect, provides that the parties may stipulate for a foreclosure without giving the statutory notice.    See Code, section 4273; *Gibson v. McIntire,* 110 Iowa, 417; *Gear v. Schrei,* 57 Iowa, 666; *Denny v. Van Dusen,* 27 Kan. 437; *Johnston v. Robuck,* 104 Iowa, 523.    That a party of full age, and acting *sui juris,* can waive a statutory, or even a constitutional, provision in his own favor, affecting simply his property or alienable rights, and not involving considerations of public policy, is a well-settled principle of law.    *Phyfe v. Eimer,* 45 N. Y. 104; *Embury v. Conner,* 3 N. Y. 511; *Kneetle v. Newcomb,* 22 N. Y. 249 (78 Am. Dec. 186).    In what respect, if any, is the contract in question violative of public policy?    It relates simply to defendants' property rights, and no principle of public policy is involved.    It is, in effect, a waiver of any damages, real or supposed, resulting from the seizure and sale of the property at public auction.    That plaintiff had the right at any time it saw fit to take the property, and sell the same at public auction, is conceded; but defendants'

counsel contend that it could not do so without following the statutory method of foreclosure. The court so instructed the jury. The question of right to sell without notice, and the effect of a good-faith public sale in accordance with the terms of the instrument, was not submitted, or, if it was, the jury was instructed, in effect, that the sale made without the giving of the statutory notice was invalid, and amounted to a conversion of the property. In this, we think, there was error: *First,* because defendants agreed not to claim damages if the plaintiff took the property, and sold the same at public auction; and, *second,* because it is apparent from a reading of all the provisions and conditions of the mortgage that the parties agreed to a foreclosure by sale at public auction without following the statutory provisions. The agreement not to claim damages, construed with the other provision, clearly indicates that sale might be made at public auction without following the statute with reference to foreclosure. We have no occasion, in this connection, to determine the question of good faith. The court eliminated this element from the case in its instructions, and held, in effect, that the sale must, in any event, have been in accordance with the statutes. That an agreement not to claim damages is valid where no question of public policy is involved. See *Griswold v. Railway Co.,* 90 Iowa, 265; *Richmond v. Railroad Co.,* 26 Iowa, 191; Sutherland Damages (2d ed.) section 6; *Lee v. Tillotson,* 24 Wend. 337. The maxim, *"Modus et conventio vincunt legem,"* applies where no question of public policy or fraud is involved. Where no rule of law or principle of public policy is involved the parties may, by contract, make a law for themselves. From what has already been said, it is apparent that we do not agree with the trial court in its view of the law regarding the giving of statutory notice of foreclosure. Consideration of the whole instrument clearly indicates that the mortgagee had the right to take possession of the mortgaged property, and to sell the same at public sale in the ordinary man-

ner; and, in view of the clause waiving damages if the sale was so conducted, defendants can claim nothing for the failure to give the statutory notice. Nothing further need be said on this point.

No issue seems to be made regarding the maturity of the notes, yet the court instructed that plaintiff must prove that it felt itself insecure in order to establish the maturity thereof. Neither good faith nor malice was referred to, and the burden placed on plaintiff was to prove a state of mind existing at the time the property was sold. It seems to us this was error. There is no doubt that plaintiff took possession of the property, and sold it at public sale. This made a *prima facie* case for the plaintiff, and it was not required to make further proof. Defendants admitted that plaintiff took possession of and sold the property; hence there was no conflict in the evidence on this proposition. In any event, the court should have instructed that plaintiff had made out a *prima facie* case, and that the burden was then on the defendants to show that the notes had not matured. *Wells v. Chapman,* 59 Iowa, 658; *Richardson v. Coffman,* 87 Iowa, 127. The argument, as we have said, covers a multitude of questions, but none, aside from those we have discussed, are properly raised. For the errors pointed out, the judgment is REVERSED.