OF

## THE STATE OF IOWA

AT

## DES MOINES, MAY TERM, A. D., 1902,

AND IN THE FIFTY-SIXTH YEAR OF THE STATE.

---

C. A. Frick, Administrator, v. Charles Kabaker, Appellant.

**Conversion:** BILL OF SALE IN FACT A MORTGAGE. When a person giving a bill of sale on a stock of goods intended as a mortgage, dies, the subsequent act of the mortgagee in selling the goods is a conversion thereof.

**Bill of Sale as Mortgage:** EVIDENCE OF DEBT OF SELLER RECITED IN BILL OF SALE: *Burden of proof.* Where a bill of sale contains an acknowledgment of a debt due from the seller to the purchaser, the fact that the bill was not voluntarily executed as a bill of sale, or was intended as a security, would not impose the burden of proving the indebtedness on the seller in an action against him for the conversion of the goods included in the bill, in which the indebtedness is set up as a set-off.

*Same.* When a debt is acknowledged in a bill of sale, and also in an account stated executed by the seller, proof that one of the

(494)

instruments was procured by fraud, in an action against the purchaser for the conversion of the property included in the bill of sale, in which the indebtedness is pleaded as a set-off, does not impose the burden on defendant of proving the indebtdness:

EXPENSE OF CLOSING OUT STOCK: *Not admissible evidence.* In action for the conversion of a stock of goods, which was not closed out by the defendant after the conversion, but was used in the ordinary manner, evidence of the expense of closing out of a stock of merchandise is not admissible.

**Evidence:** ADMISSIONS IN TESTIMONY: *Transcript not only evidence.* Evidence in an action of conversion by an administrator, given by the stenographer in prior probate proceedings to discover property in possession of defendant, as to admissions by defendant as a witness in such proceeding is not rendered inadmissible by Acts Twenty-seventh General Assembly, chapter 9, authorizing the admission of a certified copy of the testimony of a witness taken on a former trial, but requiring that all his testimony be included therein.

TRANSCRIPT WHERE PERSON WHOSE EVIDENCE IS TRANSCRIBED TESTIFIES: *Not admissible.* Where the defendant testifies, in an action by an administrator for the conversion of the property of intestate, a transcript of defendant's testimony in prior probate proceedings by the administrator to discover estate assets is not admissible in defendant's behalf.

BOOKS OF ACCOUNT: *Foundation.* Books of account are not admissible in evidence unless shown by the party who kept them to be books of original entry.

*Stating deduction from books.* When a merchant's account books in evidence show the sales made during a certain period, it is not error to refuse to allow a witness who has gone over the books to state the aggregate sales.

*Summary of footings admissible.* When the accounts of merchants are in issue, a summary of footings by an expert who has examined their books is admissible.

*Same—Exclusion harmless error.* When an expert testifies, on an issue as to a merchant's accounts, as to the results of his examination of the merchant's books, the refusal to admit his summary of the footing of the books is harmless error.

COMPARISON OF ITEMS IN TWO BOOKS: *Is for jury and not witness.* A witness cannot be asked to make a comparison of items on two separate account books, as such comparison can be made by the jury.

*Weight of books—Jury question.* The weight of books of account as evidence is for the jury, and not for the court.

COMPETENCY OF WITNESS: *Opinion on value.* A witness in an action for the conversion of a stock of goods, who testifies that he knew the stock of goods, its cost and value, may give his opinion as to its values.

*Cost price obtained from invoices.* A witness in an action for the conversion of a stock of goods may testify as to the knowledge of the cost price thereof, which he obtained from invoices which he saw when the goods were delivered.

*Right to cross-examine as to competency.* It is not error, in an action for the conversion of a stock of goods, to refuse to allow the defendant to cross-examine a witness as to the amount of goods in stock in order to determine his competency, before the witness testifies to the value of the goods.

*Same—Harmless error.* The refusal to allow defendant in an action for the conversion of a stock of goods to cross-examine a witness as to amount of the stock before he gives his opinion of the value thereof, even though erroneous, is harmless, where the witness is thoroughly cross-examined after he gives such opinion.

CROSS-EXAMINATION. Such witness cannot be cross-examined as to other statements made by defendant in probate proceedings, as to which the witness was not examined in chief.

HARMLESS ADMISSION. The admission of evidence for plaintiff, even if erroneous, is harmless, where the defendant introduces evidence showing the same facts.

*Harmless exclusion.* Error in refusing to allow a notary public taking an acknowledgment of a bill of sale to testify whether the grantor was clear in mind when he executed the instrument is harmless if the witness is allowed to testify that the grantor was competent to transact business, and knew what he was doing.

FALSITY OF NOTARIAL CERTIFICATE: *Degree of proof.* An instruction that the falsity of the certificate of a notary to a bill of sale must be established by satisfactory affirmative proof is erroneous, as calling for a greater quantity of proof than necessary.

PERSONAL TRANSACTION WITH DECEDENT. A brother of an intestate is not an interested person, or person deriving any interest or title from intestate, within the meaning of Code, section 4604, pro-

hibiting an interested person or persons deriving any interest or title from a deceased person from testifying to a personal transaction with deceased as against this administrator, assignee, etc., when the intestate, though a single man, leaves parents, surviving, who inherit his property.

*Same.* Code, section 4604, prohibiting an interested person or persons deriving any interest from a deceased person from testifying to a personal transaction with deceased as against his administrator, etc., does not prohibit such testimony on behalf of the administrator.

*Same.* Evidence by defendant in an action by an administrator for the conversion of goods, which defendant had sold deceased before the conversion, as to the delivery to deceased of the goods and invoices, is incompetent under Code, section 4604, prohibiting an interested party from testifying to a personal transaction with deceased as against his administrator, etc.

*Same.* Evidence of defendant, in an action by an administrator for the conversion of property of intestate, as to the state of feeling between intestate and his sisters, is incompetent, as pertaining to a personal communication with deceased.

*Transcript of evidence of defendant.* A transcript of the evidence of defendant in a proceeding in probate to discover assets belonging to an intestate, which relates to personal transactions between defendant and intestate, is inadmissible on behalf of the latter in an action by the administrator for the conversion of the property of intestate.

REFUSAL TO ADMIT WRITING IN FOREIGN LANGUAGE. The refusal to allow the introduction of a postal card written in a foreign language because the court cannot determine the meaning thereof is not erroneous, where no attempt is made to inform the court as to its meaning.

SECONDARY EVIDENCE: *Foundation.* Evidence as to the contents of existing letters is inadmissible as being secondary evidence, but is admissible if the letters are shown to have been destroyed.

Instructions: *Ruling on objection to opening statement need not be written.* Statements by the court in ruling on objection to an opening statement in which the purposes of the opening statement in general and in relation to the cause on trial are referred to, are not erroneous as being an instruction not in writing, as required by the statute.

**Plea and Charge:** FRAUD AND UNDUE INFLUENCE DISTINGUISHED. Where the issue of undue influence is not raised by the pleadings in an action in which a bill of sale is attacked for fraud, it is error to instruct that undue influence in procuring the execution of the instrument will invalidate it, as undue influence and fraud are not the same as matter of law.

SAME: *Plea and proof.* Where there is evidence of undue influence in the execution of a bill of sale attacked for fraud, but there is no issue of undue influence raised by the pleadings, error in instructing that undue influence in its execution will invalidate the instrument is not harmless.

*Facts as to undue influence must be pleaded.* When undue influence is relied on to invalidate a bill of sale, the facts showing the undue influence must be clearly pleaded.

*Same.* When the validity of an account stated is in issue, but no issue of want of consideration is raised by the pleadings, an instruction that the creditor is not entitled to recover if the account stated was without consideration is misleading and erroneous.

**Equity Jurisdiction:** TRANSFER TO EQUITY: *Fraud within concurrent jurisdiction.* An action of conversion involving issues as to whether a bill of sale was merely given as a security, and whether it was procured by fraud, will not be transferred to the equity docket by reason thereof, as such issues are not solely of equitable cognizance.

RIGHT TO ACCOUNTING. Where plaintiff's pleadings in an action of conversion raise the issues whether a bill of sale given defendant by plaintiff was a mortgage to secure an existing indebtedness and whether it was procured by fraud, and allege that no debt was due defendant, an answer alleging that the bill of sale was the result of a settlement between the parties, that the value of the goods sold did not exceed the sum due defendant, that defendant took possession of the goods under the belief that he was the owner thereof, and sold part of them, but not enough to pay his claim, and that he expended a certain sum in selling the goods, and asking that such claim be treated as an offset to plaintiff's claim, does not entitle defendant to an accounting.

*Same.* An answer in an action for the conversion of goods, in which the question whether a bill of sale of goods to defendant was a mortgage is in issue, which alleges that the instrument

was executed in settlement of an account, and demanding that the court determine the amount due if the settlement is not confirmed, and which sets out a long account, in which the only entries on one side, except six or seven credits of merchandise, are payments by way of set-off, does not entitle the defendant to an accounting.

GOODS OBTAINED BY FRAUD: *Lien for expenses in care and sale.* A person receiving goods under a bill of sale fraudulently procured does not have a lien on the goods for his expenses in the care and sale of a portion thereof.

Review on Appeal: *Pleading over after demurrer to answer is sustained.* A defendant who pleads over after a demurrer is sustained to his answer waives the right to have such ruling considered on appeal.

ARGUMENT. A mere statement by counsel on appeal that a demurrer should not have been overruled is not such argument as will authorize consideration of the ruling.

REFUSAL TO ALLOW TEST OF RECOLLECTION: *Discretion.* The asking of questions to test the recollection of a witness being in the discretion of the trial court, the refusal to permit such questions will not be considered on appeal.

REFUSAL TO ADMIT WRITING IN FOREIGN LANGUAGE: *Harmless.* The refusal of the trial court to admit a postal card, written in a foreign language, even if erroneous, does not show prejudicial error authorizing a reversal when the contents of such card is not shown on appeal.

IMPROPER ARGUMENT: *Objection below.* Alleged improper argument by counsel will not be considered on appeal, when his remarks are not made a part of the record by bill of exceptions.

*Appeal from Des Moines District Court.*—HON. W. S. WITHROW, Judge.

TUESDAY, MAY 13, 1902.

ACTION for the conversion of a stock of merchandise, consisting of clothing, boots and shoes, and gentlemen's furnishings. Defendant denied plaintiff's ownership or right to the possession of the property, and pleaded that he

was the owner thereof, or at least, ·held title thereto as security for money advanced to plaintiff's intestate, Julius Brown; the amount of which was agreed to by Brown during his lifetime. Defendant further pleaded a settlement with Brown during his life, and further asked that, if the settlement be not approved, an accounting be had, and the true amount declared and the same be made a lien on the stock of goods. A demurrer to the cross-petition asking for an accounting was sustained. Thereafter defendant filed a further amendment to his cross-petition, and a demurrer to that was also sustained. After this ruling defendant filed a further amendment to his answer and a plea of set-off, based on his good faith in disposing of the stock of goods. Plaintiff filed a reply to the answers which were allowed to stand, and over defendant's protest the case was tried to a jury, resulting in a verdict for plaintiff, and defendant appeals.—Reversed.

*John M. Mercer* and *Blake & Blake* for appellant.

*Chas. Willner* and *C. L. Poor* for appellee.

DEEMER, J.—The first questions presented relate to matters of practice, and they will be disposed of before going to the merits of the controversy. In order to dispose of these questions it will be necessary, however, to briefly recite some of the facts. Prior to his death, in May, 1898, Julius Brown was engaged in business in the city of Burlington. He had a limited capital, and defendant, who was his friend, and was engaged in a like business, furnished him goods from time to time with which to conduct the business. Defendant claims that the amount at the time of Brown's demise was $2,787.87. On May 3 or 4, 1898, it is claimed that Brown, who was then about to leave Burlington to go to a hospital in Chicago for medical treatment, executed and delivered to defendant the following paper:

"Burlington, Iowa, Mary 3rd, 1898. This is to certify that I, the undersigned, make statement regarding my effects that I individually conducted a clothing and gents' furnishing goods store at 707 Jefferson street, in the city of Burlington, Iowa, Des Moines county, and I have bought goods of Chas. Kabaker, of same city, and of which I owe to said Chas. Kabaker, of same city, the sum of ($2,787.87) two thousand seven hundred eighty-seven and 87-100 this day. Julius Brown. Witness: H. Naman." On the fifth day of May, 1898, Brown also executed to defendant a paper which on its face, purports to be a bill of sale for the stock of merchandise in consideration of the amount due as stated in the first exhibit. This document was also signed by defendant, and contained a release of Brown from all demands of defendant on account of money advanced. Defendant immediately took possession of the stock of goods, and was disposing of the same when this action was brought. May 12, 1898, plaintiff was appointed administrator of Julius Brown's estate, and as such appeared in the probate court, and asked an order on defendant to turn over the goods received by him from Brown. On the hearing of this application the administrator was ordered to bring suit to determine the validity of the bill of sale. Pursuant to that order plaintiff commenced this action, which as we have seen, as originally commenced, was purely an action at law for the conversion of the property. Defendant denied plaintiff's right to the possession of the property, pleaded the settlement with Brown and the bill of sale. Plaintiff pleaded, in reply, fraud in obtaining the account stated and the bill of sale; that the bill of sale was intended simply as security; that Brown was not owing defendant anything at the time the bill of sale was executed, and that, as a matter of fact, the paper was executed as a power of attorney to allow defendant to transact business while Brown was at the hospital in Chicago; that the paper was obtained through mis-

representation and deceit, and at a time when Brown was so weakened by disease that he was incapable mentally of transacting business. A motion attacking this pleading was overruled, and defendant then filed an amendment to his answer, pleading that the first exhibit above set out was the result of the settlement of an account between himself and Brown, and that the value of the stock of goods did not exceed the amount found due on the settlement.

Thereupon defendant moved to refer the case to a referee, because the issue involved a long accounting, and also moved that the case be transferred to the equity docket for trial of the matters pleaded in plaintiff's reply. This motion was overruled.

It is plain, we think, that this ruling was correct. Down to this time there was no equitable issue for trial, and no such prayer for an accounting as would justify the sustaining of the motion either to refer or to transfer to the equity docket. An instrument absolute in form may be shown to be a mortgage either at law or in equity, and fraud is not solely of equitable cognizance. *Boyce v. Allen,* 105 Iowa, 249; *McAnnulty v. Seick,* 59 Iowa, 586; *Bank v. Delahaye,* 82 Iowa, 34. The account stated pleaded by defendant constituted a new promise distinct from the original items, and no accounting was necessary under the issues as they stood when the motion was filed. *Schutz v. Morette,* 146 N. Y. 137 (40 N. E. Rep. 780); *Porter v. Railway Co.,* 99 Iowa, 351. Before the motion was ruled on however, defendant filed an amendment to his answer, and a cross-petition, to which a demurrer was sustained. Defendant thereupon filed an amendment, pleading almost the exact state of facts embodied in the former amendment, and a demurrer to this was also sustained. Thereupon he filed an amendment setting forth the exhibit to which we first made reference; that he took possession of the goods in the belief that he was the owner thereof; that he sold a part of the goods, but not

enough to cover the amount found due, and had expended money and labor in selling the same amounting to $450; and he asked that the amount expended, together with the amount found due on the settlement, be treated as an offset to plaintiff's claim. As no pleading was filed to this amendment, it was treated as denied by operation of law. As defendant did not stand on the pleadings to which the demurrers were sustained, but proceeded to plead over, he waived the rulings thereon, and cannot now be heard to complain thereof in support of his motion to transfer and to refer. *Frum v. Keeney,* 109 Iowa, 396; *Geiser Mfg. Co. v. Krogman,* 111 Iowa, 506; *Adams v. Holden,* 111 Iowa, 57; *Krause v. Lloyd,* 100 Iowa, 666. The answer to which no demurrer was filed, which was allowed to stand, and on which the case went to trial, did not present such a case of mutual accounting as to justify an order of reference. *Galusha v. Wendt,* 114 Iowa, 597, and cases cited. Moreover, should we treat the two pleadings to which demurrers were sustained as proper to be considered in determining the correctness of the ruling on the motion to refer and transfer,— which it is manifest we cannot do,—still there was no error of which defendant may complain. The first of these claims a settlement and account stated, and pleads such delay on the part of the administrator in instituting the suit as to lead him to believe that the administrator conceded the correctness of the settlement with Brown, and to incur large expense in the storing and selling of the property received by him. He further alleged that the settlement with Brown was *bona fide,* although disputed by the administrator, and then set forth a long itemized statement out of which the indebtedness arose, and asked that the settlement be approved, or, if not confirmed, then that the court determine the amount due, and make that sum, with the expense in caring for and handling the property, a lien upon the goods or the proceeds thereof. The itemized statement at-

tached makes 116 pages of printed record, showing charges for goods and credits of cash covering nearly seven years of dealings between the parties. There were but six small credits of merchandise. All other credits were of cash, said to have been paid by Brown to defendant. Of course, the account is made up of hundreds of items. But it is not a case of mutual demands. The credits, with the exception of these six or seven items, were merely payments by way of a set-off, and the case is not such an one as to justify an order of reference even with this itemized bill treated as a part of the account. Moreover, defendant was not entitled to a lien on the goods for the amount of his account and expenses unless the bill of sale should be treated as security for the account, and this was not claimed. Equity would not create a lien in the absence of an agreement between the parties that one should be created. As the suit was brought by the administrator, defendant could not take the goods of the estate, and plead his claim as an offset. That the case, with this amendment, was not such as to justify a reference or an equitable accounting, see *McMartin v. Bingham,* 27 Iowa, 234; *Grant Dist. Tp. v. Bulles,* 69 Iowa, 525. In each of the cases relied on by appellant there were mutual accounts. The second amendment repleads the same facts, with some others which were not of equitable cognizance, and there was no error in the ruling on the motion to refer, etc. The rulings on the demurrers are not argued. True, there is a general statement that they should have been overruled, but this is not argument. We do not, therefore, consider the correctness of these rulings. It must be remembered at all times that this action is by an administrator, and that, if the bill of sale was intended as a mortgage defendant was guilty of conversion in disposing of the goods covered thereby in the manner he did.

II. We come now to the real merits of the controversy, and first to the rulings on evidence. The issues have been

sufficiently stated to enable us to pass upon the errors assigned without again setting them out. One Robinson, the stenographer, who took the evidence in the probate court on proceedings to discover property in the possession of defendant, was called as a witness to testify as to certain statements made by defendant on that occasion. The defendant objected to this evidence because not admissible under chapter nine, Acts Twenty-seventh General Assembly, and also complains of the court's ruling denying him the right to call out on cross-examination all that was said by defendant on that occasion. There is no merit in either contention. The transcript of the evidence was not introduced. The reporter was called, and testified to certain admissions said to have been made by defendant. This was admissible as primary evidence, and not for impeaching purposes, and the acts of the general assembly referred to have no application. The cross-examination called for other and independent statements made by the witness, and the court correctly denied it. But no prejudice resulted in any event, for all these matters were offered and introduced by defendant as a part of his defense. Nate Brown, a brother of the deceased, was called as a witness for plaintiff, and objection was made to his competency under section 4604 of the Code. As deceased was a single man, and his parents were alive at the time of the trial, and took whatever property the deceased may have had, the objection is without merit. In any event, he was examined by the administrator, and the section does not apply. *Leasman v. Nicholson,* 59 Iowa, 259. This witness after stating that he knew the stock of goods, the cost price, and the value of the goods, said that it was worth $6,000 at the time defendant took possession thereof. Objection was made because the witness was incompetent to give an opinion as to value. Manifestly, the objection was properly overruled. After some cross-examination of the witness, the defendant

moved to strike his evidence as a whole, and also his answers as to the cost price of goods. Having shown some qualifications to answer as to value, his evidence was properly received. *Clark v. Ellsworth,* 104 Iowa, 449. His evidence as to cost price was derived from invoices which he says he saw when the goods were delivered, and was proper. *Whitney v. Thatcher,* 117 Mass. 523; *Hudson v. Railroad Co.,* 92 Iowa, 231. Before this witness was asked to give an opinion as to value, defendant attempted to cross-examine him with reference to the amount of goods in stock, and objection thereto was sustained. The ruling was correct. After he had given evidence as to value, he was thoroughly cross-examined, and no prejudice resulted. Moreover, if the question was asked to test the witness's recollection, the ruling was discretionary, and we should not interfere. Other matters asked Brown with reference to the conduct of his sister were not cross-examination. A postal card written in a foreign language and signed by Brown, was shown this witness, and he was asked to identify the signature. The court said that it was in a foreign language, and, as he could not determine what it contained, he would sustain the objection. No effort was made to enlighten the court, and there is no means of telling whether or not the ruling was correct, and if incorrect, whether or not prejudice resulted. Surely, if counsel claimed there was anything material in the letter, he should have informed the court as to its contents. We are not favored with either the original or a translation, and, if the ruling was incorrect, no prejudice appears. The notary public who took acknowledgment of the bill of sale was asked as to whether deceased was clear in mind when he acknowledged the instrument. No facts had been detailed by the witness—who was a non-expert—on which to found an opinion, and objection to the question was sustained. Even if it be conceded that the ruling sus-

taining the objection was erroneous, yet, as the witness several times answered that he (Brown) was competent to transact business, and understood all he was doing, no prejudice resulted. Defendant was asked regarding the delivery of goods and invoices to the deceased, and plaintiff's objection of incompetency under section 4604 of the Code was sustained. These rulings were clearly correct. *McElhiney v. Hendricks,* 82 Iowa, 657, does not support appellant's contention. The questions approved in that case were put to and answered by defendant without objection. Other complaints with reference to this matter are ruled adversely to defendant in *Re Brown's Estate,* 92 Iowa, 379. Evidence as to contents of letters written to deceased was secondary, and rightly excluded. Defendant was asked as to the state of feeling between Julius Brown, deceased, and his sisters. This was properly excluded as a personal communication. Books of Kabaker & Nathan were offered in evidence, and objection thereto was sustained. As the books were not shown by the oath of the party who kept them to be of original entry, they were properly excluded. There was no reason for allowing one who had gone over defendant's books to state aggregate sales to Brown during the years 1894, 1895, 1896, 1897, 1898. The books were in evidence, and clearly showed these matters. Other evidence of personal transactions between defendant and Brown was properly excluded. Defendant offered to prove that a small claim was filed against Brown's estate, but was not permitted to do so. There was no error in this. Even if erroneous, there was no prejudice. Defendant was denied the right of showing the expense of closing out a stock of merchandise. In this there was no error. The witness was not asked to value the stock, nor did he undertake to make the value depend on this item of expense. More-

over, the stock of merchandise in this case was not closed out, but taken by defendant, and used in the ordinary manner. A witness was asked to make comparison of items on two separate books. The jury could do this as well as the witness, and no prejudice resulted from denying an answer. An expert who examined the books of Brown & Kabaker was asked for a summary of the footings. This might well have been received, but, as the witness stated the results of his examination, no prejudice resulted from the ruling excluding it. Contents of letters said to have been received by one Yetta Brown were given in evidence. As the letters were shown to have been destroyed, the evidence was competent. Defendant offered certain parts of the translation of the shorthand reporter's notes taken on the hearing in the probate court. These related wholly to personal transactions between him and Brown, and were properly excluded. They were also incompetent because defendant was present in court at this trial, and was on the witness stand in his own behalf. Appellant's counsel are wrong in their assumption that this transcript was offered in evidence by plaintiff, and that they were, therefore, entitled to the whole thereof. Moreover, the matter was not cross-examination of the stenographer who took the evidence. This disposes of all the ruling on evidence that are of sufficient importance to justify special mention, and we now turn our attention to the complaints of the instructions.

III. When plaintiff's counsel was making his opening statement, defendant made an objection thereto, and the court, in ruling thereon, stated in a general way the purpose of opening statements, and, referring more specifically to the matter in hand, said that, if it became necessary during the progress of the case to instruct with reference therto, he would do so in writing. This is said to be erroneous because it was an instruction, and was

not put in writing, as the statutes require. There is no merit in the claim. What was said was nothing more than a ruling on an objection, which need not be reduced in writing. Instructions 1, 2, 3, 10, 12, 13, 14, 15, 16, 17, and 23 are complained of. Most of the criticisms are hypercritical, and we will notice only those which seem to present debatable questions. It will be remembered that there are two written statements in the case, purporting to have been signed by the deceased, one the account stated, which is set out at length in our statement of the case in the earlier part of this opinion, and the other the bill of sale therein referred to. This bill of sale also contains an acknowledgment by Brown of the amount of his indebtedness to the defendant, a statement that the bill of sale was made in consideration of said indebtedness and a release of all indebtedness from Brown to defendant. In the second instruction the court said that, if plaintiff established either that the bill of sale was not voluntarily executed as a bill of sale or that it was intended by both parties as security, or that it was without any consideration, and fraudulent, he would be entitled to recover, and that the burden would then be on defendant to establish the amount of his (Brown's) indebtedness to him (defendant). This is not strictly accurate for two reasons; First, because the bill of sale found to be a mortgage would nevertheless establish the amount of defendant's indebtedness unless obtained by fraud or misrepresentation; and, second, though not voluntarily executed as a bill of sale, the recitations of indebtedness therein would be in no manner destroyed, and, if it was obtained without fraud, or if the first exhibit above referred to was genuine, and not fraudulently obtained, the statement of indebtedness contained in either would be conclusive of Brown's indebtedness to defendant. On account of other instructions, which seem, in a measure, at least to cover the ground, we should not reverse on this ground alone, but call

attention to it that the error may not be repeated on a retrial.

In the third instruction the court, after referring to the bill of sale, said, among other things: "You are instructed that the legal effect of such instrument was to convey to the defendant the absolute title to and right of possession of the property therein described, provided the same was voluntarily executed by Julius Brown for a consideration, and was not induced by fraudulent acts or misrepresentations *or undue influence* of the defendant." The italicized part is complained of because there is no issue of undue influence made by the pleadings. This complaint is well founded. There is no pleading tendering any such issue, and the matter was nowhere else explained in the instruction. Appellee contends that fraud and undue influence are one and the same thing in law. This is not true as a matter of law, and the court, at no place in its instructions so stated to the jury. That prejudice resulted from this instruction is beyond controversy. Much of the evidence, if believed, tended to show undue influence, rather than fraud; and the jury may have based its finding on the theory that the various instruments received by defendant from Brown acknowledging an indebtedness to defendant and fixing the amount thereof were obtained by undue influence on account of the intimate relations then and theretofore existing between the parties. When undue influence is relied upon, it must be clearly set up in the pleadings, by stating in substance the facts which show the domination of the will of the influencing party. *Jackson v. Rowell,* 87 Ala. 685 (6 South. Rep. 95, 4 L. R. A. 637). While undue influence is a species of fraud, it must, nevertheless, be pleaded as such, in order to be availing. In the instruction complained of, the court made a distinction between fraud and undue influence, and at no time told the jury that they were to be treated as one and the same thing. This in itself shows that appellee's contention is without merit. Instruction 14 in effect told the jury that if they

found either the bill of sale or the acknowledgment of indebtedness fraudulent and of no effect, then the burden was on defendants to show that Brown was indebted to him, and the amount thereof. This also was erroneous. Even if the account stated or acknowledgment of indebtedness was obtained by fraud, this would not destroy the bill of sale, if it was executed in good faith. In instruction 15 the court said, among other things, that, if the acknowledgment of indebtedness was without consideration, and that no debt was due, defendant, then plaintiff would be entitled to receive the value of the property. There was no claim in the pleadings that this account stated was without consideration; and the instruction, without explanation, was well calculated to mislead the jury. The consideration for an account stated or an acknowledgment of indebtedness is known only to lawyers, and it is likely that some of them would have difficulty in explaining it. The ordinary juror would likely say it had no consideration, for nothing was paid therefor. The issue with reference to this document was that it was obtained through fraud, and the court should not have obscured this issue by introducing the question of want of consideration. In the same instruction the jury was directed, if it found for plaintiff, to allow him interest from May 12, 1898. The petition claims interest only from August 31, 1899. This is manifestly erroneous. *Winney v. Manufacturing Co.,* 86 Iowa, 608. The same error is also found in instruction No. 23. Instruction No. 16, relating to defendant's books of account, was proper. The court admitted them in evidence, but left the weight thereof to the jury. This is in accord with established rules. *Churchill v. Fulliam,* 8 Iowa, 45; *Cummins v. Hull's Adm'r,* 35 Iowa, 253. Instruction No. 17 told the jury that, if the bill of sale was intended as security only, then plaintiff was entitled to recover. This was correct, as also was No. 23 in so far as complaint was made of it on this score. *Colby v. W. W. Kimball Co.,* 99 Iowa, 321; *Howery v. Hoover,* 97

Iowa, 581. Instruction No. 23 was further erroneous in that the jury was told among other things, that the verdict should be for defendant, unless it.found that the bill of sale was without consideration. Had the jury followed this instruction exactly as written, its verdict should have been for defendant, for it found that Brown was indebted to defendant in the sum of $1,200. Instruction 7 asked by defendant was properly refused for the reason that it called for a greater quantity of proof, to wit, "satisfactory affirmative proof," that the certificate of the notary to the bill of sale was false. Complaint is made of remarks of plaintiff's counsel in his opening argument to the jury. As the alleged remarks are not made a part of the record by bill of exceptions, we may not consider this assignment.

IV. Lastly, it is argued that the verdict is not supported by the evidence, and is contrary thereto. In view of a retrial, it is better that we express no opinion on this matter. It may be proper to state, however, that we think the verdict on the evidence in the record now before us is excessive. The stock of goods was not worth, in our judgment, on the record before us, more than $3,500. The jury, without any competent or reliable evidence, found it worth $4,200. But we need not elaborate on this point, nor comment on the amount of Brown's indebtedness to defendant as disclosed by the record. We have carefully gone over a voluminous record consisting of more than 500 pages, and are satisfied that on account of the errors pointed out defendant did not have a fair trial.

The judgment of the district court is therefore RE-VERSED.