## KENT v. NATIONAL SUPPLY CO. OF TEXAS.

### No. 998.

Court of Civil Appeals of Texas. Waco.
Feb. 19, 1931.

Rehearing Denied March 19, 1931.

Lawrence Treadwell and Callicutt & Upchurch, all of Corsicana, for appellant.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellee.

GALLAGHER, C. J.

Appellee, National Supply Company of Texas, sued G. C. Kent, J. E. Butler, and C. A. Middleton, alleging that they were doing business as partners under the name of Corsicana Oil & Refining Company, Central Petroleum Company, a corporation, and First National Bank of Corsicana, a corporation,

to recover the value of five separate items of oil well machinery and equipment alleged to have been on September 1, 1927, the property of appellee, and to have been on that day converted by said parties defendant to their own use and benefit. Said defendants filed a joint answer, consisting of general demurrer, general denial, and a further plea that appellee's cause of action accrued more than two years before the commencement of this suit.

Erwin & Warren owned an oil and gas lease on a five-acre tract of land known and designated as block 12 of the Green Springfield tract out of the Lane survey in Navarro county. On the 21st day of September, 1923, they purchased from appellee one 100 H. P. oil engine, one compressor complete with standard equipment, and one 6 H. P. Novo engine, and to secure a balance of the purchase price thereof amounting to $4,230, executed and delivered their chattel mortgage thereon, reciting that the same was located on the block of land aforesaid. Said mortgage was forthwith filed with the county clerk of Navarro county for registration according to the terms of Revised Statutes, article 5498, providing for the registration of chattel mortgages on machinery susceptible of being attached to realty. Said Warren and others thereafter, on the 25th day of January, 1924, executed a deed of trust on all their right, title, and interest in and to the block of land aforesaid and various other lands, to secure the sum of $10,000 evidenced by notes held by the Central State Bank of Corsicana. Said deed of trust was filed for record on the 17th day of July, 1924. Erwin & Warren thereafter on the 26th day of March, 1924, purchased from appellee certain casing and tubing, and executed and delivered to appellee their chattel mortgage thereon and also on all the property described in their first mortgage. Said mortgage recited that it was given to secure a balance due on the purchase price of said casing and tubing amounting in the aggregate to $4,100, and recited that the property described therein was located on the block of land aforesaid. Said mortgage was forthwith filed for registration as required by the statute aforesaid. Erwin & Warren thereafter executed and delivered to appellee their third chattel mortgage on all the property described in their first mortgage as aforesaid, and also on another 100 H. P. oil engine and another compressor complete with all standard equipment, to secure notes amounting to $6,240. Said mortgage recited that all said property was located on the block of land aforesaid, and that such mortgage was given in extension of the two preceding mortgages and as a first lien purchase price mortgage to secure the balance due for said machinery. Said mortgage was dated September 8, 1924, and filed for registration in accordance with the statute aforesaid on the 27th day of September, 1924. All the interest of the grantors in said deed of trust in and to said block of land was on April 6, 1926, sold by the trustee in said deed of trust to W. H. Fendley. He was an employee of the Central State Bank of Corsicana. He purchased the property and held title thereto for said bank. Neither the deed of trust nor the deed from the trustee to Fendley purported to convey the machinery situated on or used in connection with said land. Appellee thereafter on May 13, 1926, claiming to act under powers of sale contained in its said mortgages, respectively, sold at public sale the five items of property sued for herein and described in its mortgages aforesaid. Appellee, as authorized by the terms of said mortgages, purchased all of such property. All the same was at that time set upon cement foundations and attached thereto with iron bolts. Said Fendley and Mr. Knox, an executive officer of the bank, attended said sale and gave notice thereat that the bank was claiming the lease on said land and everything thereon under Fendley's purchase. The Central Petroleum Company was organized to take over the lease on this and other blocks of land acquired by Fendley by his purchase at the trustee's sale. Fendley conveyed all said properties to said corporation on May 22, 1926. His deed purported to convey not only all the right, title, and interest held by him in the land described therein, but also all machinery and equipment situated thereon or used in connection therewith. The consideration recited in said deed was $10 cash and five vendor's lien notes payable to the Central State Bank, amounting in the aggregate to $40,487.50. Said corporation, on the 24th day of May, 1926, entered into what was termed a working agreement with the Corsicana Oil & Refining Company, a common-law trust, with G. C. Kent, J. E. Butler, and C. A. Middleton as trustees. Said trustees were sued herein as partners, and such relation was not denied under oath, as required by statute for a contest of such allegation. By the terms of said agreement said oil and refining company was to take possession of said lease, develop and operate the same, and out of the profits of such operation pay the indebtedness owed by the petroleum company to the bank in full, and was to thereupon become invested with an undivided half interest in such properties. Said trustees, or said Butler acting for himself and his cotrustees, took immediate possession of said properties, including the machinery and equipment involved in this suit, and proceeded with the development and operation of the same until March 14, 1928, when the petroleum company conveyed all such properties to G. C. Kent. Kent at or about the same time acquired all the rights in the premises held by said oil and refining company. Thereafter he continued the development and operation of said properties,

claiming the same, together with the machinery and equipment in controversy in this case, as his own.

The case was tried to a jury. The issues submitted, with the answers of the jury thereto, are as follows:

"(1) Do you find from a preponderance of the evidence that the defendant, G. C. Kent, and those under whom he claims title to the machinery described in plaintiff's petition, have had possession of said machinery, claiming it as their own, for more than two years previous to the filing of this suit, which was August 27th, 1928?

"Answer: No.

"(2) If you answer the above question 'No,' then you will answer this question: What is the reasonable market value of the machinery described in plaintiff's petition at the time it was taken into the possession of defendants, if you believe it was taken into their possession? Answer in dollars.

"Answer: $4,000.00."

The court, upon consideration of said verdict and of a joint motion filed by all the defendants asking for judgment in favor of each of them severally on or notwithstanding such verdict, rendered judgment in favor of appellee against the Central Petroleum Company and G. C. Kent for the sum of $4,000, and rendered judgment in favor of all the other defendants. G. C. Kent alone has appealed.

### Opinion.

Appellant assails the finding of the jury in response to the first special issue submitted that appellant and those under whom he claimed title to the machinery involved herein did not have possession of the same, claiming it as their own, for more than two years prior to the institution of this suit. At the time of the purchase of the machinery by appellee at its own foreclosure sale, Mr. Knox, representing the bank, requested appellee's representative to leave such machinery in place, stating that it would be better to do so because he had a deal pending whereby both the bank and appellee might get the moneys due them, respectively, out of the property. There was testimony that appellee acceded to the request and that this mutual arrangement was continued and never repudiated prior to July, 1928, a month or two before the institution of this suit. There was testimony that appellee's representatives at the time of the sale hired a pumper as watchman and left the machinery in his charge. Mr. Knox testified as a witness in the case. He stated that he had claimed title to said machinery for the bank and for the petroleum company ever since such sale. He further testified, however, that at the time of the sale he had not discovered the record of appellee's mortgages and that he told appellee's representative that the question of which had the superior right

to such machinery would depend upon the record. While he denied requesting appellee's representatives to leave the machinery in place, he admitted that he told them it would be to the best interest of both to do so. He further testified that he had in view at the time an arrangement with the trustees of the oil and refining company, and that Butler represented them; that he was hoping that they would find deep oil there was the reason why he wanted the machinery left in place. He further testified that he had a number of conferences with appellee's representative with reference to the matter, and that in such conferences he told appellee's representative to see Mr. Butler, and if he could arrange a trade with said Butler and he wanted to buy, it would be all right with him; that he understood that appellee's representative and said Butler continued negotiations for the purchase by Butler of said machinery until some time in December, 1927. There was also testimony tending to show that negotiations for such purchase were in fact conducted between a representative of appellee and said Butler from time to time until the fall of 1927, when he agreed to purchase such machinery for the oil and refining company; that notes for the agreed purchase price were prepared and sent to him for execution and never returned. Not until the sale by the petroleum company to appellant on March 14, 1928, was there a distinct and unequivocal repudiation of appellee's claim of title to this machinery and a holding thereof hostile to such claim. The finding of the jury is amply supported by the evidence. 2 Tex. Jur. p. 72, part § 37, and authorities cited in note 10 thereto. See also R. W. Wier Lumber Co. v. Eaves (Tex. Com. App.) 296 S. W. 481, 482, par. 2, and authorities there cited; Houston Oil Co. v. Pullen (Tex. Com. App.) 272 S. W. 439, 440, par. 2, and authorities there cited.

Appellant presents a group of propositions in which he contends that there is a fatal variance between the allegation in appellee's petition that said machinery was converted by the defendants on or about September 1st, 1927, and proof that appellant bought the same on March 14, 1928, and claimed the same continuously thereafter. He also contends in this connection that appellee's allegation that the value of the machinery at the date of conversion was $5,600 will not support the judgment for $4,000 for a conversion by him on March 14, 1928, the date of his purchase. Appellee alleged that the defendants, and each of them, converted the machinery involved herein on or about September 1, 1927, and that the value of the same was $5,600. Appellant testified that he purchased the machinery on March 14, 1928, and that he had been claiming the same as his own ever since, but that he had never had

any personal connection therewith prior to that time. He further testified that its reasonable market value at that time was $4,000. Appellant's witness Bryan testified that he saw the machinery shortly after appellant's purchase and that the reasonable market value of same, exclusive of repairs placed thereon by Butler, was $4,000. No objection was made by appellant to any of the testimony introduced on the subject of value. The general rule as to the allegation of time in actions for conversion is stated in 26 R. C. L., p. 1130, as follows:

"An averment of the precise time of the conversion is not necessary, but it is necessary to state that it was sometime prior to the commencement of the suit and within the statutory limitation within which the action can be brought."

Our Supreme Court, in Gulf, C. & S. F. Ry. Co. v. Witte, 68 Tex. 295, 296, 4 S. W. 490, 491, said:

"It is an elementary rule that, in proving the time at which a cause of action arose, the plaintiff is never confined to that laid in his declaration or petition. * * * At common law time was usually stated under a videlicet. This, by some authorities was decided necessary in order to relieve the pleader from the necessity of proving the exact date as alleged. But a requisite so purely formal as this has no place under our system of pleading and practice."

On proof of allegations of time and place, see First National Bank v. Brown, 85 Tex. 80, 87, 23 S. W. 862; St. Louis, A. & T. Ry. Co. v. Evans, 78 Tex. 369, 370, 14 S. W. 798; First National Bank v. Stephenson, 82 Tex. 435, 436, 18 S. W. 583; Wilkins v. Ferrell, 10 Tex. Civ. App. 231, 30 S. W. 450, 451; Kerr v. Blair, 47 Tex. Civ. App. 406, 105 S. W. 548, 551; Texas & N. O. R. Co. v. Weems (Tex. Civ. App.) 184 S. W. 1103, 1104, par. 4; English v. City of Fort Worth (Tex. Civ. App.) 152 S. W. 179, 180; Bancroft Co. v. Haslett, 106 Cal. 151, 39 P. 602; Jackins v. Bacon, 63 Cal. App. 463, 218 P. 1027, 1029, par. 1; 49 C. J., p. 815, § 1200. Appellant cites and relies upon the case of May v. Anthony (Tex. Civ. App.) 151 S. W. 602. The court stated in the opinion in that case, in substance, that the time of the conversion was, under the facts involved, a material issue. The variance in time between the allegation and proof there considered was from thirteen to fifteen months. There is nothing in this case invoking the application of the rule so announced. The testimony introduced with reference to value covered the time from September 1, 1927, to November, 1928, and tended to show that there was little, if any, change in value during that time. Appellant himself testified to its value at the time of his purchase, and the verdict of the jury followed the same and was apparently based thereon. Before a variance between allegation and proof will constitute ground for reversal, it must appear that such variance was reasonably calculated to surprise or mislead the party complaining thereof to his prejudice. St. Louis, A. & T. Ry Co. v. Evans, supra, page 370 of 78 Tex., 14 S. W. 798; Brown v. Sullivan, 71 Tex. 470, 10 S. W. 288; First Nat. Bank v. Stephenson, supra, page 436 of 82 Tex., 18 S. W. 583; Wiebusch v. Taylor, 64 Tex. 53, 56; Taylor v. Merrill, 64 Tex. 494, 497; Sealy Cotton Co. v. Gustafson & Spencer (Tex. Civ. App.) 258 S. W. 911, 913, par. 4; Federal Surety Co. v. Ragle (Tex. Civ. App.) 25 S.W.(2d) 898, 902; Hunstock v. Roberts (Tex. Civ. App.) 55 S. W. 514. It seems that the contention of variance in such cases should be raised by objection to the evidence at the time it is offered. St. Louis, A. & T. Ry. Co. v. Evans, supra, page 370 of 78 Tex., 14 S. W. 798; Kelsey v. Myers (Tex. Civ. App.) 29 S.W.(2d) 855, 858, par. 3, and authorities there cited. We do not think that under the facts in this case it can be reasonably contended that plaintiff was surprised or misled by the allegations of appellee's petition on this issue, nor do we understand that he so contends.

Appellant presents a group of propositions in which he insists that appellee's petition was insufficient to support the judgment rendered. His specific contention in this connection is that appellee's petition alleged a joint conversion by all the defendants and did not allege that he individually converted the same. As heretofore shown, appellee sued appellant, Butler and Middleton, and alleged that they were doing business as partners under the name of Corsicana Oil & Refining Company. The names of the other parties defendant followed in that immediate connection. Appellee, however, further alleged not only that the defendants took possession of the machinery described in his petition and converted the same to their own use and benefit, but also that each of them did so. All the defendants in the case filed a joint answer. The names of appellant, Butler, and Middleton appear therein as individuals, separate and distinct from the Corsicana Oil & Refining Company, the alleged partnership. The testimony showed that no claim to the ownership of this machinery was ever asserted by such partnership. On the contrary, Butler as managing member continued negotiations with appellee for its purchase until a very short time before appellant purchased the interest of the petroleum company in said block of land, together with the machinery and equipment used in connection therewith. The court held that such sale by the petroleum company and such purchase by appellant and his adverse claim thereunder constituted a conversion both by the petroleum company and by him individually, and rendered judgment

against both of them for the value of the machinery as found by the jury. Appellant alone prosecutes this appeal. A partnership at common law is not a legal entity but only a contractual status. Suits affecting partnership matters must be brought by or against the members of the firm. Glasscock v. Price, 92 Tex. 271, 273, 47 S. W. 965; Martin v. Hemphill (Tex. Com. App.) 237 S. W. 550, 553, par. 4, 20 A. L. R. 984; Feldman v. Seay (Tex. Civ. App.) 291 S. W. 350, 352, par. 4. The liability arising out of a partnership contract or the commission of a tort by one or more members of a partnership, while joint as to all, is also several as to each of the individual partners. Fowler Commission Co. v. Chas. Land & Co. (Tex. Com. App.) 248 S. W. 314, 315, par. 2; Ray v. Dyer (Tex. Civ. App.) 20 S.W.(2d) 328, 332, par. 5; 47 C. J., p. 886, § 365. All the alleged members of appellant's firm were parties defendant in this suit. The allegation that each of the defendants converted the property involved was a sufficient allegation that appellant himself converted it independent of the alleged partnership.

Appellant, by a group of propositions, contends that the testimony fails to show title to said machinery in appellee. Appellee proved affirmatively the execution and record of its mortgages covering the entire property, a sale thereunder, and its purchase at such sale. The presumption is that appellee in this matter followed the law and not that it violated it. Haynes v. Western Union Telegraph Co. (Tex. Com. App.) 231 S. W. 361, 362, par. 2, and authorities there cited. A contention that such sale was invalid and insufficient to reinvest appellee with the title to such machinery must therefore be supported by affirmative proof of some fatal defect therein. The specific matters relied on were that the posting of notices of the sale was insufficient, that no bill of sale was executed or delivered, and that appellee did not acquire possession of the property purchased. The testimony showed affirmatively that three notices of the sale of said machinery under appellee's mortgages were posted; that one of such notices was posted at the courthouse door, and another in the town of Powell. There is no contention that either of these places was not public, within the meaning of the statute. The testimony showed that the third notice was, in accordance with the express requirements of article 3812 of our Revised Statutes, posted on the building that housed the machinery and where it was sold; that a road through said block of land ran by the side of said building and was traveled by the public at that time as well as by those interested in the lease. We think the place at which such notice was posted was sufficiently public to meet the requirements of the law. Appellee, in addition to posting the notices, published a copy thereof in a newspaper at Corsicana. The power contained in appellee's mortgages authorized a sale of the property at either public or private sale, with or without notice. The fact that appellee elected to sell the same at public auction did not constitute a waiver of such authority nor impose upon it the duty of giving notice of the time and place of sale in the specific manner required by the statutes for the sale of personal property under execution. Geiser Mfg. Co. v. Krogman, 111 Iowa, 503, 82 N. W. 938–940; Lexington Bank v. Wirges, 52 Neb. 649, 72 N. W. 1049, 1050; Marseilles Mfg. Co. v. Perry, 62 Neb. 715, 87 N. W. 544, 545. The execution and delivery of a bill of sale is not necessary to pass title to personal property. Fidelity Union Fire Ins. Co. v. Ballew-Satterfield Co. (Tex. Civ. App.) 10 S.W.(2d) 163, 164, par 1. Mr. Knox for the bank requested appellee's representatives not to remove the property. Appellee thereupon employed a watchman and placed the same in his charge. None of these matters were sufficient to invalidate the title acquired by appellee by its purchase at such foreclosure sale.

Appellant contends that the testimony was insufficient to support the finding of the jury that the property converted was of the value of $4,000. There was testimony tending to show that the machinery involved herein was used by Butler and his cotrustees or partners from May 24, 1926, until the sale by the petroleum company to appellant on March 14, 1928. There was also testimony that during such use various repair parts were purchased by Butler and used to replace like parts worn out thereby. Appellant was president of the petroleum company. That company did not claim such replacements. Appellant in his individual capacity purchased the lease and equipment from the petroleum company, but he purchased such replacements separately from Butler or the oil and refining company. Appellee asserted no claim to such replacements. Its action was for the conversion of the original machinery purchased by it at such foreclosure sale. Appellant testified that he knew the reasonable market value of the machinery involved in the suit and that the value of the same was $4,000. Appellant also proved by his witness Bryan that the value of the machinery in question, excluding the replacements purchased and added thereto by Butler, was $4,000. The jury assessed the value thereof at that sum. Appellant made no objection to the manner in which the issue of value was submitted to the jury. There being evidence to support the same, appellant is bound thereby.

Appellant presents a group of propositions in which he contends that the court erred in entering judgment against him in favor of appellee in the absence of an affirmative finding by the jury that he converted its

property, as alleged in its petition. He also contends in this connection that appellee waived any right to recover herein by not requesting the court to submit such issue. We have examined all of appellant's assignments of error and find that none of them raise the issue presented by said propositions. Appellant suggests incidentally in this connection that said propositions present fundamental error. We do not think so. The submission of an issue supported by uncontradicted testimony of such conclusive nature that reasonable minds cannot differ as to the effect thereof is neither necessary nor proper. Such an issue is one of law and should be determined by the court. Ewing v. Wm. L. Foley, Inc., 115 Tex. 222, 280 S. W. 499, 503, par. 5, 44 A. L. R. 627; Hebert v. New Amsterdam Casualty Co. (Tex. Com. App.) 3 S.W.(2d) 425, 426, par. 3; Guerra v. Garcia (Tex. Civ. App.) 258 S. W. 531, 532, par. 2; Phoenix Furniture Co. v. Kay (Tex. Civ. App.) 10 S.W.(2d) 422, 425, par. 8; Peeler v. Smith (Tex. Civ. App.) 18 S.W.(2d) 938, 939, par. 3. Before we can determine that the testimony in this case failed to show without contradiction the conversion of appellee's property by appellant with such certainty that reasonable minds could not differ on the issue and that a controverted issue of fact for the determination of the jury was therefore raised, we must search the entire statement of facts and weigh the testimony recited therein. An error that requires such consideration of the statement of facts does not come within the definition of fundamental error announced by our Supreme Court. Houston Oil Co. v. Kimball, 103 Tex. 94, 103, 104, 122 S. W. 533, 124 S. W. 85; Ford &

Damon v. Flewellen (Tex. Com. App.) 276 S. W. 903, par. 2; Blackmon v. Trail (Tex. Com. App.) 12 S.W.(2d) 967, 968, pars. 6 and 7; Egan v. Lockney Farmers' Co-operative Society (Tex. Com. App.) 284 S. W. 937, par. 1. The authority of a Court of Civil Appeals to reverse a judgment is limited to consideration of errors duly assigned, or apparent upon the face of the record and coming within the definition of fundamental error as above limited. Such court has no right to consider other errors, however willing it may be to do so. W. T. Waggoner Estate v. Sigler Oil Co. (Tex. Com. App.) 284 S. W. 921, 926, par. 2; Blackmon v. Trail, supra, page 968, pars, 4 and 5 of 12 S.W.(2d). We therefore find it unnecessary to determine appellee's counter contentions that the uncontradicted evidence in this case shows a conversion by appellant as a matter of law, or, in the alternative, that the submission by the court of the issue of value without objection on the part of appellant to the form of such submission constituted the submission of a material part of the controlling issue of conversion and negatived a waiver thereof, under the rule announced in McDaniel v. Orr (Tex. Com. App.) 30 S.W.(2d) 489–491; North v. Atlas Brick Co. (Tex. Com. App.) 13 S.W.(2d) 59, 61; Driskill Hotel Co. v. Anderson (Tex. Civ. App.) 19 S.W.(2d) 216, 217, pars. 4 to 6, inclusive.

We have considered all the other propositions presented by appellant as ground for reversal and are of the opinion that none of them require or justify such action. The judgment of the trial court is therefore affirmed.