Williams v. Talbot.

JOSEPH M. WILLIAMS AND OTHERS v. WILLIAM TALBOT AND OTHERS.

On an application for a first continuance, the applicant need not state the facts which he expects to prove by his absent witness; but if he choose to disclose them, the court may unquestionably take them into consideration in determining the propriety of granting the application.

See the application for a continuance in this case, in which it was held that the facts disclosed in the affidavit, offered in support of a first application, were not sufficient to entitle the applicant to a continuance.

Where the payment of the purchase money is recited in a bond for title, and the obligor institutes proceedings against the obligee for the land, alleging that no consideration had been given; it was held that the obligee may establish the payment of the purchase money by the recitals in the bond, and that he is not called upon to prove that fact by other testimony.

It is always to be inferred, in the absence of testimony to the contrary, that parties have acted within the scope of their legitimate authority, and it will never be presumed that they have violated the law, when the reverse is equally consistent with the facts disclosed.

A grant to a league of land from the government of Coahuila and Texas, was issued the 30th day of December, 1834; on the same day the grantee, a colonist of the Nashville or Robertson colony, in which the land was situated, executed a title bond to the Empresario of said colony: It was insisted that the sale was made prior to the issuance of the grant; that a

sale by a colonist, before the issuance of a grant, was in violation of the then existing laws. *Held*, in the absence of all testimony on the subject, that it must be presumed that the bond was not executed until after the consummation of the grant.

It was further insisted that the sale by the colonist to the Empresario was in violation of the laws and public policy of the then existing government of Coahuila and Texas; *held*, that neither the executive nor legislative authority, in existence at that date, forbade such contracts, nor indicated that they were contrary to public policy, nor have they ever been so held.

ERROR from Robertson. Tried below before the Hon. N. W. Battle.

This was an action of trespass to try title brought by Joseph W. Williams, Eliza E. Williams, his wife, William Purdy and David Purdy, plaintiffs in error, against William Talbot, Charles P. Talbot and James B. Talbot, defendants in error, to recover a league of land, and for damages. Sterling C. Robertson, under whom defendants claimed, was permitted to defend, and after his death, his son, E. S. C. Robertson, was permitted to defend.

The defendants pleaded not guilty, and the three, five and ten years limitations.

At the Fall Term, 1858, the plaintiffs asked for a continuance; the defendants announced themselves ready for trial. The plaintiffs not being able to show any good cause why the cause should be continued, entered into an agreement with the defendants, that in consideration that the defendants would consent to a continuance, the plaintiffs agreed to waive and release the right to commence and prosecute any suit for the land in controversy, after the cause should be finally determined and adjudicated within twelve months after the final adjudication, or at any other time. Whereupon the cause was continued.

The plaintiffs claimed the land in controversy as heirs at law of Letsom Purdy, the grantee, from the State of Coahuila and Texas. The defendants claimed under a purchase from Letsom Purdy. By an amended answer the defendants alleged that on or about the 12th day of January, 1835, and after the said Letsom Purdy had received his grant, he sold the same to the said Robertson, and executed his bond for title; that said Purdy was dead; that neither he nor the plaintiffs, his heirs at law, had executed a

conveyance therefor, in pursuance of the terms of said bond; prayed that the title be divested out of plaintiffs and vested in defendants, and that they be quieted in their possession.

In an amended petition, the plaintiffs alleged that the defendants claimed title to the land in controversy by virtue of two title bonds, which purport to be made by the ancestor of plaintiffs to the said S. C. Robertson; that the first of the bonds bears date the 31st of October, 1834, and purports to convey one half of said league; that this bond was executed in consideration that the said S. C. Robertson would "clear said title" out of the office, meaning thereby, that the said S. C. Robertson would obtain from the then existing government a title to his league of land. They further averred, that the final title, issued to their ancestor, bears date the 31st day of December, 1834, and that the title bond was executed before that time; that before the issuance of the final title, their ancestor, Letsom Purdy, was prohibited from selling the land; that such sale was in violation of the laws of Coahuila and Texas, then in force. They further averred that the said S. C. Robertson at the time of the execution of said bond, was the empresario of the Nashville or Robertson's colony; as such, he was the agent of the government of Coahuila and Texas, for the disposition of the public lands embraced within his colonial enterprise or empresario district; that their ancestor was an emigrant from the United States and was a foreign colonist in said colony; that the land was situated in said colony; that said S. C. Robertson, by reason of his said official position, could not make such a contract with their ancestor without violating the public policy of the then existing government; that it was in fraud of the rights of that government; in violation of the positive enactments of law; of the spirit and letter of the contract made with the government of Coahuilla and Texas, for the colonial enterprise of which the said S. C. Robertson was empresario; wherefore, they say, that said bond should not be enforced against them. They further averred that the other title bond executed by Letsom Purdy to said Robertson, did not bear date the 12th of January, 1835, as alleged by defendants, but is dated the 30th day of December, 1834, and that the final title was dated the 31st

11*

day of December, 1834, and they pleaded the same matters against the enforcement of this bond as against the other.

At the March Term, 1859, the cause was called for trial. The plaintiffs applied for a continuance. In support of their application, they read the following affidavit:

"This day came and appeared Charles Stewart, attorney for plaintiffs, (the said plaintiffs not being in attendance on the court,) and after being duly sworn, says, on oath, that he cannot go safely to trial at this term of the court, because he says that he procured from the general land office a translated copy of the original title made to Letsom Purdy, and regularly certified to by the trsnslator of the general land office, John Buchanan, on the 15th day of January, 1856, and Stephen Crosby, commissioner of said land office, on the same day and year, and which translation shows that the Letsom Purdy title bears date 31st of December, 1834, and that since the last term of this court, the defendant filed interrogatories to Edward Linn, Spanish clerk of the general land office, and F. M. White, commissioner of the general land office, and caused their depositions to be taken; which said application and agreement to take the depositions of the above witnesses was made about four weeks since, and the depositions of the above named witnesses was returned on Monday, the first day of this term of the court; which depositions disclose the fact that a translation was made out by E. Sterling C. Robertson, one of the defendants, and certified to by the said Robertson, whilst translator of said general land office, which has been attached to said depositions; which translation represents the Letsom Purdy title to be dated the 30th day of December, 1834. Affiant says that he is surprised by said testimony, that he relied on said translation procured by him, and was not informed until to-day that any other date was to the said Letsom Purdy title than that of the 31st of December, 1834. Affiant further says, that after the interrogatories were presented to him and he agreed to take the depositions of said Linn and White, he wrote to S. Crosby, in the city of Austin, to cause said title on file in the general land office, to be examined, and to forward to affiant the true date of said title and that he received a letter from said Crosby, which is made a part of this

affidavit, which discloses the fact that said title is doubtful. The date of said title is an important fact at issue in this cause, and that he expects to prove by John Buchanan, who resides in —— county, that the L. Purdy title is in fact dated the 31st day of December, 1834, and that this is in fact the true date of said title to L. Purdy, as on file in the general land office. Affiant says, by an agreement on file in this cause, he is precluded from a second action in this cause, and that if he is forced to trial at this term of the court, it will work great injustice in this cause to the plaintiffs. Affiant says that the bond, under which defendants claim title to the land sued for, is dated the 30th day of December, 1834, and that one of the issues that will be submitted in this cause, is that said defendants claim under a conveyance made before the issuance of the final title, which, under the then existing laws, is void. Affiant says that the above evidence is material to the prosecution of the cause, and that he knows no other person by whom he can prove the same facts, and that he has not had sufficient time to procure the above testimony, and that the application is not sought for delay, but that justice may be done, and that he expects to procure said testimony by the next term of this court. Affiant further says, that said S. Crosby resides in Travis county, Texas, and that he is unable at this term of the court to produce the affidavit of said Crosby, stating what he, the said Crosby, will testify to; but that he, during the present term of the court, has received a letter from said Crosby, stating the true facts of the case, in regard to the date of the title issued to Letsom Purdy, which letter is herewith filed, and to which the attention of the court is respectfully called. Affiant further says, the defendants have taken the deposition of Joseph Webb, and that Webb has testified in said deposition that for the land in controversy, Sterling C. Robertson traded Letsom Purdy other land, or a title bond for other land, which title bond or title, the said Purdy afterwards traded to a man named Thomas Mackey, and to counteract said proof, some two months, or nearly so, he sent interrogatories to W. Y. McFarland, counsel for defendants, to be crossed, and that the same about four weeks ago was returned to him crossed, with an agreement in writing to take the

deposition of Elias Mackey, son of Thomas Mackey, and that he forwarded said interrogatories to Joseph P. Wall, a notary public of Hill county, Texas, where said Elias Mackey resides, and made all necessary arrangements for the payment of the costs of taking the same; that he forwarded said interrogatories to said Wall about four weeks since, and that said depositions have not been returned as affiant believed would have been done; that the deposition of Elias Mackey was material to the prosecution of this suit, and that he has used due diligence to procure said depositions of E. Mackey. Affiant says that there was an agreement of the attorneys in this cause, that each party might at any time forward to opposite attorneys interrogatories to take depositions of witnesses without filing the same, and causing notice to be issued and a commission to be issued; and relying upon said agreement, which has been fully complied with by plaintiffs' attorney, he did not file said interrogatories and cause notice to be issued, and that he expected said depositions at this term of the court, and that he expects to procure said depositions by the next term of this court. Affiant further states, that there may be other witnesses besides John Buchanan, by whom he can prove the correct date of the final title, issued to Letsom Purdy, is dated the 31st of December, 1834, whose testimony he may be able to procure by the next term of the court; and that affiant also desires a continuance of this cause in order to have time to examine, himself, the protocol of title on file in the general land office, in order to satisfy himself what the correct date of the title thereto is, and that he has not had time previously to do so."

Sworn to on the 29th day of March, 1859.

The letter referred to, and made a part of the affidavit, is dated the 18th day of March, 1859, and is as follows: "As regards the discrepancy in the date of the Letsom Purdy title, the error might occur with any one, who would not scrutinize closely. The correct date is '30th December, 1834.' The '30,' however, would as often be taken for '31,' as what it really is. The figures being made badly."

The court overruled the application for continuance.

On the trial the plaintiffs introduced in evidence a translation

of the original grant from the government of Coahuila and Texas for the league in controversy, to Letsom Purdy, bearing date "31st December, 1834." The defendants admitted that the plaintiffs were the heirs of Letsom Purdy, deceased, and that they, the defendants, were in possession of the land sued for.

The defendants then read in evidence a certified translation of the same grant, corresponding in all respects with the copy read by the plaintiffs, except in its date—the copy read by defendants being dated "30th December, 1834." They read also the depositions of F. M. White, the commissioner of the general land office, and of Edward Linn, the Spanish translator, who testified that the grant to Letsom Purdy was dated "30th December, 1834." They also read a title bond executed by said Letsom Purdy to S. C. Robertson for the league, dated "30th December, 1834." The defendants also read the deposition of Joseph Webb, referred to in the affidavit for continuance, which was filed the 26th day of March, 1858. The other facts are sufficiently indicated in the opinion of the court. Verdict and judgment for defendants. The plaintiffs prosecuted this writ of error.

*Charles Stewart*, for plaintiffs in error.—It has been repeatedly decided by this court that when an application for a first or second continuance is made in conformity with the statute regulating continuances, the court can exercise no discretion, but must grant the motion. (Prewitt v. Everett, 10 Tex. Rep., 283; Hipp v. Hackett, 4 Id., 18.) A contract made against public policy is void. If void at the time of its making, it can not subsequently be enforced. (Hunt's heirs v. Robertson's heirs, 1 Tex. Rep., 748.) What may have been the public policy of a country, is sometimes a difficult matter to determine. Story, in his work on contracts says : " This rule, however, may be safely laid down that whenever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void as being against public policy." (Story on Contracts, 546.) Adopting this rule as a criterion, the sale to Robertson was in violation of public policy. The facts show that the bonds were executed before the execution of the final title, and therefore are void. (36

art., Decree 272, Laws C. and T.; Spillars v. Clapp, 3 Tex. R., 498; Atkinson v. Bell, 18 Id., 494.) The second title bond was a substituted contract which operated to carry into effect the first, and therefore void as to the extent of the first bond. (Robinson v. Varnell, 16 Tex. Rep., 388.) When it is manifest that (although the application was properly overruled,) injustice has been done in forcing a party to trial unprepared, a new trial will be granted. (Hagerty v. Scott, 10 Tex. Rep., 525 : Chambers v. Fisk, 15 Tex. Rep., 335.)

*James C. Walker*, for defendants in error—cited on the question of continuance, Williams v. Edwards, 17 Tex. Rep., 41; Baker v. Kellogg, 16 Tex. Rep., 117 ; Parker v. McKelvain, 17 Id., 157; Lewis v. Williams, 15 Tex. Rep., 48; Claiborne v. Yoeman, 15 Id., 44; Titus v. Crittenden, 8 Tex. Rep., 139. The admission of improper evidence will not authorize a reversal of the judgment where there was sufficient competent evidence to warrant the verdict. (Pridgen v. Hill, 12 Tex. Rep., 374; Herndon v. Casiano, 7 Id., 323.) As to the consideration, he cited Burleson v. Burleson, 14 Tex. Rep., 9; Box v. Lawrence, 14 Id., 555.)

MOORE, J.—The record in this case discloses no error in the rulings in the court below, for which the judgment should be reversed.

The plaintiffs' affidavit for a continuance was insufficient when tested by the rules governing an application for a first continuance. The affidavit embraced two grounds : First, to enable the plaintiffs to procure the testimony of Buchanan, a former translator in the general land office, for the purpose of showing the true date of the protocol, or grant to Purdy, of the league of land in controversy. Second, for want of the testimony of a witness to whom interrogatories had been propounded for the purpose of disproving a statement made by another witness whose deposition had been previously taken by the defendants. The sufficiency of the showing for a continuance, upon the first ground, has not been insisted upon in argument by the counsel for the

Williams v. Talbot.

plaintiff, and it may, therefore, be regarded as having been abandoned. It evidently did not authorize or require a continuance. The residence of the witness whose testimony was desired was not stated, as required by the statute. And the letter of Crosby, which was attached to the affidavit for a continuance, and referred to as a part of it, negatived the fact upon which the application, in this particular, was rested. Nor was the other ground upon which the continuance was asked, entitled to a more favorable consideration. There had evidently not been such diligence to procure the testimony as entitled the plaintiffs to a continuance. The testimony which they desired to contradict, had been on file among the papers of the cause for nearly twelve months previous to plaintiffs propounding interrogatories to the witness, for the want of whose evidence they desired a continuance. The affidavit did not disclose the manner of transmitting the interrogatories, or the circumstances attending their efforts to procure the testimony with sufficient fullness, in view of the facts of the case as disclosed by the record, to enable the court to say that the plaintiffs had used due diligence to procure the evidence, and were authorized to have reasonably entertained the expectation that they would have procured it by that term of the court. (Mays v. Lewis, 4 Tex., 38; Johnson v. Evans, 15 Tex., 40; Williams v. Edwards, 15 Tex., 41; Baker v. Kelly, 16 Tex., 117; Parker v. McKelvain, 17 Tex., 157.) Nor did the intrinsic character of the testimony, for the want of which the continuance was asked, entitle it to any very favorable consideration from the court. On an application for a first continuance, a party need not state the facts which he expects to prove by his absent witness; but if he chooses to disclose them, the court may unquestionably take them into consideration in determining as to the propriety of granting the application. In this case the testimony, on account of which the continuance was desired, was altogether of a negative character, and was intended merely to contradict a witness who had been examined in chief by the opposite party, but on a matter that had been elicited from him on cross-examination by the plaintiffs, and in respect to which, it may be said, that they had made him their own witness.

If, however, there were any doubt as to the correctness of the ruling of the court upon the application for a continuance, the facts disclosed upon the trial of the cause made it very apparent that no injury had resulted to the plaintiffs by the refusal of the court to grant it. If the witness had testified to the facts stated by the plaintiffs in their affidavits for a continuance, and also in the affidavit made in support of their motion for a new trial, it evidently could not have affected the decision of the case. The bond from Purdy acknowledged the payment in full by Robertson of the consideration or purchase money for the land. The defendants were not called upon to establish the fact by other testimony. If the plaintiffs controverted it, it was incumbent upon them to disprove it. Proof that a part of the consideration had not been paid in the manner stated by one of the witnesses, would certainly not do this. It may also be remarked, that there was ample proof of the payment by Robertson of the consideration for the land, aside from the acknowledgment by Purdy in the bond, or the testimony of the witness whom the plaintiffs desired to contradict. There was no better reason for the granting of a new trial, than in support of the application for a continuance, and it was properly refused.

The testimony, to the introduction of which the plaintiffs excepted, was certainly not pertinent to any issue in the case, and might have been properly excluded from the jury. But it would in no way have affected the verdict. Its only object seems to have been to respond to an attack upon the character of the ancestor of one of the defendants; and, if improper, it was induced by the like improper evidence offered in the first instance by the plaintiffs.

The final title for the league of land in dispute, and the contract between the grantee Purdy, and Robertson, both bear date on the 30th of December, 1834; and in the absence of all testimony on the subject, it must be presumed that the contract was not executed until after the consummation of the grant. It is always to be inferred, in the absence of testimony to the contrary, that parties have acted within the scope of their legitimate authority. It will never be presumed that they have violated the

law when the reverse is equally consistent with the facts disclosed to the court. If the validity of the contract were doubtful, the long possession of the land by Robertson, and those claiming under him, and that this fact was well known to Purdy, together with his frequent acknowledgments of its sale to Robertson, and admissions that he had been fully paid for it, would tend strongly to establish it ; and might, perhaps, without other proof, after so great a lapse of time, be sufficient to establish the defendants' title.

The main ground upon which the plaintiffs relied for a recovery of the land was, that the contract between Purdy and Robertson was illegal and void, because, as they insist, it was made in violation of public policy. The land in controversy was granted to Purdy as one of the foreign colonists introduced into the Nashville colony, of which Robertson was at the time of his purchase the empresario. And the plaintiffs insist that the policy of the law, therefore, forbid Robertson purchasing it. But they have cited no authority to sustain this assumption. Neither the executive or legislative authority in existence at that date forbid such contracts, or indicated that they were contrary to public policy; and they have never been so held by the courts. Under these circumstances it can hardly be supposed, after so great a length of time, that we should feel disposed to do so upon the mere force of polemic reasoning. It has not been insisted by the plaintiffs that the second bond or contract between Robertson and Purdy was a mere substitution of the original obligation that had been given before Purdy received a title for the land, and when by law he could not sell it. It is, therefore, unnecessary to inquire what effect this, if so, might have upon the case. The judgment is affirmed.

Judgment affirmed.