WESTERN UNION TELEGRAPH CO. v. HAYNES. (No. 7695.)

(Court of Civil Appeals of Texas. Galveston. April 18, 1919. Rehearing Denied May 22, 1919.)

1. TELEGRAPHS AND TELEPHONES ⊚⟲66(4) — FAILURE TO PROMPTLY DELIVER — LOSS — PROXIMATE CAUSE.

Evidence *held* insufficient to show that failure to promptly deliver telegram sent by a bank with which plaintiff had pledged stock to secure note to one who had agreed to advance money to pay off note and redeem stock notifying him that, if loan was not retired, collateral would be sold, was the proximate cause of the loss due to acquisition or sale of stock by the bank.

2. PLEDGES ⊚⟲56(4)—SALE OF PROPERTY—VALIDITY.

Unless otherwise expressly authorized by the contract of bailment, a sale by a pledgee of property pledged to secure an indebtedness, to be valid, must be public after due advertisement and reasonable notice to the pledgor of the time and place of sale.

Appeal from District Court, Austin County; M. C. Jeffrey, Judge.

Suit by R. B. Haynes against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Hume & Hume, of Houston, and Albert T. Benedict, of New York City, for appellant.

Lane, Wolters & Storey, of Houston, and C. G. Krueger, of Belleville, for appellee.

PLEASANTS, C. J. Appellee brought this suit against appellant to recover damages for the alleged negligent failure of appellant to promptly deliver the following telegram:

"San Antonio, Texas, Nov. 3, 1908.
"To C. T. Sanders, Cashier Sealy National Bank, Sealy, Texas:
"Unless Haynes loan is retired previously, will sell collateral ten o'clock Wednesday, November 4th.
"[Signed] City National Bank."

The amount of damages sought to be recovered was $2,926, the alleged difference between the market value of certain shares of stock owned by the plaintiff and held by the bank as collateral to secure an indebtedness due it by plaintiff and the sum received for said stock at its forced sale on November 4, 1908.

The following are, in substance, the allegations of the petition:

On August 8, 1908, plaintiff became indebted to the City National Bank of San Antonio in the sum of $3,000, for which amount he executed his note to said bank payable on demand with 10 per cent. interest from date, and to secure said note transferred and delivered to the bank 100 shares of the capital stock of the Sealy Mattress Company. Some time in October, 1908, the bank demanded payment of the note, and plaintiff, being unable to meet the demand, applied to Mr. C. T. Sanders, cashier of the Sealy National Bank, for a loan of a sufficient sum of money to pay off said note and redeem the certificates of stock held by the San Antonio bank as aforesaid. Before any definite arrangements were made with Sanders for said loan, the San Antonio bank agreed with plaintiff and the Sealy bank that it would carry said loan until November 1, 1908. Plaintiff thereafter, during the month of October, "made arrangements with the Sealy National Bank and with C. T. Sanders, the cashier of said bank, to loan him the money to pay off the said note of $3,000 and accrued interest thereon on or about the 1st day of November, 1908, or at such time thereafter as the said City National Bank of

San Antonio demanded the payment of said note, the understanding between the plaintiff and the Sealy National Bank and its cashier, C. T. Sanders, being that the said bank or C. T. Sanders would see that the said note due the City National Bank of San Antonio, Tex., would be taken up and carried by the said C. T. Sanders or the Sealy National Bank, or by some other person or institution to be provided by the Sealy National Bank or by C. T. Sanders, cashier as aforesaid. That the said C. T. Sanders, in pursuance of said agreement and arrangement with this plaintiff, made known to the City National Bank of San Antonio its willingness and the willingness of the said C. T. Sanders, cashier aforesaid, to take up said note of plaintiff on or about the 1st day of November, 1908. That said Sealy National Bank and the said C. T. Sanders and the said institution and persons above referred to were able and willing to pay off said note of plaintiff to the said City National Bank of San Antonio, and to carry the said note secured by said certificates of 100 shares of stock in the Sealy Mattress Company for this plaintiff until such time as the plaintiff should become able to take up the same."

The San Antonio bank on November 3, 1908, determined to close out its loan to plaintiff, and in pursuance of its agreement and understanding with the Sealy Bank delivered to appellant for transmission to C. T. Sanders the telegram before set out. The telegram was accepted by appellant for transmission, but it negligently failed to promptly transmit and deliver it to the addressee, and it was not delivered to Sanders until 11:20 a. m. on November 4th. In the meantime the San Antonio bank had at 10 o'clock, or a few minutes thereafter, on the morning of November 4, 1908, sold plaintiff's stock for the sum of $3,074, and applied said sum to the satisfaction and discharge of plaintiff's said note and interest thereon.

"Plaintiff further represents unto the court that, if the defendant company had promptly delivered the message aforesaid to the said Sealy National Bank or to said C. T. Sanders, its cashier, the said bank or the said C. T. Sanders would have, before 10 o'clock a. m. on the 4th day of November, 1908, paid off the said note of $3,000 due the said City National Bank of San Antonio, Tex., and would have taken over the same, together with the certificates of stock in the Sealy Mattress Company, and would have carried the same or caused the same to have been carried for this plaintiff to such a time as the plaintiff would have been able to pay said note and take up said shares of stock, and that therefore the said certificates of stock aforesaid would not have been sold at a great sacrifice, as was done, in satisfaction and payment of said $3,000 note by the City National Bank of San Antonio, Tex."

The market value of the stock is alleged to have been $6,000, and the prayer is for recovery of $2,926, the difference between said alleged market value and the amount for which the stock was sold.

The defendant answered by a general demurrer and a general denial.

The trial in the court below without a jury resulted in a judgment in favor of the plaintiff for the amount claimed by him.

The facts alleged in the petition in regard to plaintiff's indebtedness to the San Antonio bank and his transfer and delivery to said bank of the certificates of stock to secure said indebtedness, and also the facts as to the demand for payment of the note, the subsequent agreement by the San Antonio bank with the Sealy Bank to hold the note until November 1, 1908, the sending of the telegram on November 3d, and the failure of the defendant to deliver it before 10 o'clock on the morning of November 4th, were shown by the undisputed evidence. It was also shown that Sanders had agreed with the plaintiff that he would furnish or procure the money to take up the loan in consideration of the interest which plaintiff agreed to pay for said money. Sanders testified that he notified the San Antonio bank that he had promised plaintiff to take up the note and collateral and carry it or get some one else to do so, but that he had no definite agreement with said bank as to paying or taking up the note. He further stated that, while he had no positive promise from the San Antonio bank that it would notify him before offering the stock for sale, he had requested the bank to do so, and felt confident it would show him that courtesy as a brother cashier.

In the matter of procuring the money with which to take up the note, Sanders testified that he had made arrangements with the New Ulm State Bank for $2,000 and intended to ask plaintiff's father to advance the balance required to prevent the sacrifice of the collateral; that he had a right to believe that plaintiff's father would come to his assistance, but, if he had failed him, he would have made application to the loan committee of the Sealy Bank, and, if necessary, he himself would have taken this balance rather than have permitted the sale of the collateral.

The testimony showing the sale of the stock is meager and somewhat indefinite. W. R. King, vice president of the San Antonio bank, testified that the R. B. Haynes loan of $3,000 was settled by foreclosure of the collateral by which the loan was secured, which collateral consisted of Sealy Mattress Company stock of $100 face value per share; the total face value as shown by the records of the bank being $9,000. He further testified:

"I cannot give details of the foreclosure, but said collateral was sold and the proceeds applied to liquidate the obligation. Our files are incomplete. * * * We quite likely did notify R. B. Haynes that the note was due. We probably did notify R. B. Haynes that we would sell the collateral before we sold same. I do not know when we last notified R. B. Haynes that the note must be paid. As to whether we had notified either the Sealy Bank or C. T. Sanders or R. B. Haynes of our purpose to sell the collateral prior to sending the telegram, my impression is that the telegram conveyed this information. We notified them of said pur-

pose by telegraph to the Sealy National Bank. I do not know when I had last seen R. B. Haynes prior to November 3, 1908. I cannot state when I had last communicated with him prior to November 3, 1908, in reference to the payment of said note. This matter is ancienated and our records are incomplete. As to why we did not offer longer time in our telegram than we did offer for the plaintiff to protect his collateral in our hands, we handled the transaction with our usual patience, indulgence, and consideration."

This is all of the testimony in regard to the sale of the stock and the amount realized from the sale. Neither Sanders nor plaintiff made any inquiry in regard to the sale of the stock, and neither knew how, when, to whom, or for what price it was sold. No steps were taken by either to ascertain who held the stock after November 4th, and no attempt was made to redeem it. Plaintiff testified:

"As to whether any effort was made to redeem this collateral after the demand for payment was made, I could not say as to that. I don't know when demand was made, nor what agreement the Sealy National Bank had with Mr. Sanders. I had simply turned the matter over to the Sealy National Bank, and looked to them to protect me. As to when it was I took up the matter with the Sealy National Bank or with Mr. Sanders as to the status of that transaction, I did so immediately upon my becoming aware of the fact that the collateral had been sold in San Antonio. * * * I did not make any effort personally to redeem the collateral. I do not know as matter of fact whether the collateral was actually sold at public or private sale. I have no idea whether there was a fair price gotten for it or not; I don't know what the price was. I don't know whether the San Antonio bank merely took that collateral themselves and applied it to the loan or not. They did not send me the note. I think the note was turned over to the Sealy National Bank, or to Mr. Sanders. I don't know whether it was marked paid or not. It is my understanding that the City National Bank of San Antonio applied the proceeds of this collateral in whatever way it was disposed of to the extinguishment of my obligation there and then sent the note to Mr. Sanders. I don't think Mr. Sanders gave the note to me."

Sanders testified that he had no recollection of making any request of the San Antonio bank in reference to this loan after receiving the telegram on November 4th.

[1, 2] We think this evidence wholly fails to show that plaintiff sustained the loss of his stock as a proximate result of appellant's failure to promptly deliver the telegram. All the evidence shows is that on November 4th the San Antonio bank appropriated plaintiff's stock and applied it to the extinguishment of his indebtedness to the bank, and plaintiff acquiesced in this disposition of the stock. In order to hold appellant liable for the loss sustained by him by the act of the San Antonio bank in disposing of his stock in satisfaction of his indebtedness to the bank, it devolved upon plaintiff to show that such act of the bank was lawful and deprived him of his right to redeem the stock. He could not acquiesce in the wrongful acquisition or sale of his stock by the bank and hold appellant liable for the loss thereby sustained by him. Appellee's stock was pledged to the San Antonio Bank to secure the payment of his note. Unless otherwise expressly authorized by the contract of bailment, a sale by a pledgee of property pledged to secure an indebtedness, to be valid, must be a public sale after due advertisement, and reasonable notice to the pledgee of the time and place of the sale, and a sale made in any other manner does not foreclose the pledgee's right of redemption. Luckett v. Townsend, 3 Tex. 119, 49 Am. Dec. 723; King & Co. v. Insurance Co., 58 Tex. 669; Hart v. Tyrell, 36 Tex. Civ. App. 626, 82 S. W. 1074, 86 S. W. 350; 31 Cyc. 874–878; Schouler on Bailments, p. 112.

The evidence before set out not only fails to show that the stock was sold at public auction after due advertisement and reasonable notice to appellee, but negatives such a finding.

We do not think it can be seriously contended that the telegram to Sanders which was filed with the telegraph company at San Antonio on November 3d, and which the evidence shows was a night message sent on a contract which provided that it was to be sent during the night of the 3d and delivered on the morning of the 4th of November, was reasonable notice to appellee of the sale of his stock.

Appellee having wholly failed to show that he lost his stock as a proximate result of appellant's negligence in not sooner delivering the telegram, there is no rule of law nor of equity which will hold appellant liable for the value of the stock. This conclusion renders unnecessary a discussion and determination of the other questions presented in appellant's brief.

For the reason indicated, the judgment of the trial court is reversed, and judgment here rendered for appellant.

Reversed and rendered.