### HAYNES v. WESTERN UNION TELEGRAPH CO. (No. 227–3401.)

(Commission of Appeals of Texas, Section A. June 1, 1921.)

**1. Pledges ⟨⟩56(1)—Collateral to be sold at public auction after advertisement and notice to pledgor in absence of agreement to contrary.**

The pledgee's right to sell collateral held by him to secure his debt, and the manner in which such right shall be exercised, are proper matters of contract, though, in the absence of an agreement, the law confers upon the pledgee the right to sell at public auction after due advertisement and after reasonable notice to the pledgor of the time and place of sale.

**2. Evidence ⟨⟩69—Pledgee presumed to follow law as to manner of sale in absence of evidence.**

In the absence of evidence as to the terms of the contract of pledge or the procedure by which the pledgee's lien was foreclosed, it will be presumed that the pledgee in selling collateral followed and did not violate the law as to the manner of sale.

**3. Appeal and error ⟨⟩1094(1)—Court of Civil Appeals has exclusive jurisdiction over questions of fact.**

The Supreme Court on writ of error to review judgment of Court of Civil Appeals will not consider questions of fact, the Court of Civil Appeals having exclusive jurisdiction.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by R. B. Haynes against the Western Union Telegraph Company. Judgment for plaintiff was reversed and judgment rendered for defendant by the Court of Civil Appeals (212 S. W. 260), and plaintiff brings error. Reversed and cause remanded, with instructions.

C. G. Krueger, of Bellville, and Walters, Storey, Blanchard & Battaile, of Houston, for plaintiff in error.

Hume & Hume, of Houston, for defendant in error.

GALLAGHER, J. R. B. Haynes, plaintiff in error, was indebted to the City National Bank of San Antonio in the sum of $3,000 evidenced by note and secured by the deposit as collateral of certain shares of the capital stock of the Sealey Mattress Company, of the alleged value of $6,000.

Some time in October, 1908, the San Antonio Bank agreed with Haynes and the Sealey National Bank of Sealy to hold the note until November 1, 1908.

C. T. Sanders, cashier of the Sealy Bank, subsequently, for a valuable consideration, agreed with Haynes that he would procure or furnish the money to take up the loan, and notified the San Antonio Bank of this arrangement and requested the San Antonio Bank to notify him before offering said collateral for sale.

The San Antonio Bank, on November 3, 1908, delivered to the Western Union Telegraph Company, defendant in error, for transmission and delivery, the following message:

"San Antonio, Texas, Nov. 3, 1908.

"To C. T. Sanders, Cashier Sealey National Bank, Sealy, Texas:

"Unless Haynes loan is retired previously, will sell collateral ten o'clock Wednesday, November 4th.

"[Signed] City National Bank."

The telegraph company transmitted the message, but did not deliver it to Sanders until 11:20 a. m. on November 4th.

The San Antonio Bank sold the collateral and applied the proceeds to liquidate the debt which amounted at that time to $3,074.

Sanders testified that had said telegram been delivered to him in time he would have wired the money to the San Antonio Bank.

Haynes testified that he was in Kansas City at the time and relied solely on his agreement with Sanders.

The record does not disclose the terms of the contract of pledge under which the stock was deposited, nor the details of the foreclosure sale. Neither Sanders nor Haynes made any effort to set the sale aside, or to redeem the collateral from the purchaser.

The telegraph company pleaded general demurrer and general denial. The trial was before the court. The company offered no witnesses and introduced no evidence except what was claimed to be the original telegram which it undertook to transmit and deliver to Sanders.

Judgment was rendered in favor of Haynes for $2,926, and the company appealed.

The Court of Civil Appeals reversed and rendered the judgment in favor of the company on the theory that it devolved on plain-

tiff in error, before he could recover the value of his collateral in excess of the debt secured, to show affirmatively that the San Antonio Bank made a valid sale of the collateral at public auction after the due advertisement and reasonable notice to him of the time and place of sale, and that no such showing was made. 212 S. W. 260.

[1] The right of a pledgee to sell collateral held by him to secure his debt, and the manner in which such right shall be exercised, are proper matters of contract. Jones on Collateral Securities, p. 862, § 730, from which we quote as follows:

"It is, of course, competent for the parties to agree by express terms that upon the pledgor's default, or upon his failure to keep the security good, the pledgee may sell at public or private sale at his option without giving notice of his intention or the time or place of sale, or upon giving a specified notice of such time and place."

In the absence of an agreement, the law confers upon the pledgee the right to sell at public auction after due advertisement and after reasonable notice to the pledgor of the time and place of sale. Luckett v. Townsend, 3 Tex. 119, 49 Am. Dec. 723.

[2] The evidence in this case fails to disclose the terms of the contract of pledge, or the procedure by which the pledgee's lien was foreclosed. The presumption is that the bank in this matter followed the law and not that it violated it.

In the case of Williams v. Talbot, 27 Tex. 159, 168, 169, the defendant's title depended upon the validity of a contract of sale, or bond for title executed by the original grantee of the land. The law prohibited such original grantee from selling the land prior to receiving final title. The grant of final title and the contract of sale under which defendants claimed, both bore the same date, and there was no evidence whether the contract of sale was executed before or after the grant of final title. The court in that case on this point said:

"The final title for the league of land in dispute, and the contract between the grantee, Purdy, and Robertson, both bear date on the 30th of December, 1834; and in the absence of all testimony on the subject, it must be presumed that the contract was not executed until after the consummation of the grant. It is always to be inferred, in the absence of testimony to the contrary, that parties have acted within the scope of their legitimate authority. It will never be presumed that they have violated the law when the reverse is equally consistent with the facts disclosed to the court."

The rule thus declared by the Supreme Court is applicable to this case. There being no presumption that the bank, in effecting a foreclosure of its lien by sale of the collateral, acted contrary to law or exceeded the scope of its legitimate authority, and there being no evidence to that effect, there is nothing to show that the sale was not fully binding on plaintiff in error. It follows, therefore, that the Court of Civil Appeals erred in reversing and rendering the case.

[3] Defendant in error was appellant in the Court of Civil Appeals, and in its brief in said court assigned various alleged errors not considered by that court because of its holding above discussed. Some of these assignments involve questions of fact, over which the Court of Civil Appeals has exclusive jurisdiction.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed and the cause remanded to that court for further consideration, and with instructions, in event it overrules all of appellant's other assignments of error, to affirm the judgment of the trial court.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court. ,

We approve the holding of the Commission of Appeals on the question discussed in its opinion.