**H. T. TAYLOR, Sr., Petitioner,**

v.

**Louis BANKS, Jr., Respondent.**

**No. A–10535.**

Supreme Court of Texas.

June 23, 1965.

Rehearing Denied July 28, 1965.

Spiner, Pritchard & Thompson, Houston, for petitioner.

Frank B. Brooks, Jr., Austin, for respondent.

GRIFFIN, Justice.

This is a suit brought by petitioner H. T. Taylor, Sr., against Banks Transportation Company, Louis Banks, Jr., and others to force the transportation company to transfer on its books 1200 shares of its stock which Taylor alleged he owned. Trial was to a jury, but at the conclusion of the testimony the trial judge discharged the jury and entered judgment as a matter of law ordering the transportation company to issue to Taylor the proper certificates showing Taylor's ownership of the stock, and to transfer these 1200 shares to Taylor on the books and records of the transportation company. The trial court's judgment further held that neither Louis Banks, Sr., Louis Banks, Jr. nor Clay Cotten, who had intervened, owned any of the 1200 shares. From this judgment only Louis Banks, Jr. appealed. The Court of Civil Appeals reversed the trial court's judgment and remanded the case to the district court for retrial. 383 S.W.2d 824.

We granted Taylor's application for writ of error and reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

The suit arose out of the following facts: December 17, 1959, Louis Banks, Jr. executed and delivered to Taylor his note for $26,206.53 and an additional note payable to Taylor Lumber Company in the sum of $9,082.11. Petitioner Taylor became the owner of this last note prior to its maturity. Banks made various payments on both these notes for a year or two, but by March 19, 1963, both notes were past due. To secure the payment of each of these notes, Banks had pledged Certificate No. 1 for 1200 shares of stock in Banks Transportation Company, and had executed a collateral assignment of these 1200 shares to Taylor.

March 19, 1963, Taylor's attorneys wrote Banks, demanding full payment of both notes on or before April 4, 1963. On the same day the attorneys wrote Banks that the 1200 shares of common stock "will be sold" at 11:00 A.M., Thursday, April 4, 1963, and stating the sale would be held in the lobby at the main San Jacinto Street entrance of the Harris County Court House, 301 San Jacinto Street, Houston, Texas. The letter further said: "Either you or such other parties as you may locate may be interested in purchasing such stock at such sale."

At the time and place set out in the letter notice to Banks, two of Taylor's attorneys and Taylor were present. The letter of notification to Banks was read aloud and bids called for, whereupon Taylor bid $5,000.00 for the stock and there being no other bids, the stock was struck off to Taylor.

The transportation company was controlled by Banks and his relatives and they were the officers of the company. Taylor made demand that the stock be transferred on the books of the company and the company refused. This suit resulted.

Each of the two notes which Banks had given to Taylor contained the following provision:

"In the event of non-payment of this note at maturity, however the same is brought about, the holder hereof is hereby invested with full authority to use, transfer, or sell the said pledged property, or any part thereof, or to cause the same to be done at public or private sale, with or without notice or demand of any sort, at such place and on such terms as the said holder hereof may deem best, and the holder of this note is authorized to purchase said collateral when sold for his own protection and the proceeds of such sale, transfer, or hypothecation shall be applied to the payment of this note, together with all interest, attorney's fees and costs. The surplus, if any, after payment of this note, together with all charges above stated, shall be paid to the maker of this note, and if the proceeds of the above sale shall not be sufficient to pay this note, the maker hereof agrees to make good any deficit."

Taylor did not file suit on these notes nor ask for a deficiency judgment against Louis Banks, Jr., but sought only the relief above outlined.

Banks filed a general denial and pleaded a failure of consideration for the two notes. This failure of consideration was alleged to have resulted from the fact that Taylor and Banks entered into an agreement whereby Taylor sold to Banks 50 shares of stock in a cab company, nineteen taximeters, two taxicabs and two taximeters and thirteen notes signed by Taylor's employees and given for the purchase price of certain taxicabs and equipment purchased from Taylor by these employees. Allegations were made by Banks that these notes could not be collected and that the collateral securing them was worthless cars, and therefore there had been a partial failure of consideration for the two notes he gave to Taylor. It was to secure these two notes that the 1200 shares of stock were pledged as collateral security.

Banks had no pleadings of fraud or misrepresentation on Taylor's part in conduct-

ing the sale of the collateral. Neither did Banks seek to recover the 1200 shares of stock or their value. Banks made no tender of any balance due on his note, nor did he allege that Taylor had placed it beyond his power to return the stock to Banks if Banks paid the balance due on the notes. It was not pleaded that the stock brought an inadequate price at the sale.

Since Taylor was not seeking to recover on the two notes, the plea of failure of consideration evidently went out of the case. There is no complaint here nor in the Court of Civil Appeals, nor does the judgment of the trial court mention such plea. There is no complaint of the failure of the trial court to dispose of this plea in his judgment.

In the trial court's judgment it is recited "that there is good and sufficient evidence in this case to show that the sale of such 1200 shares of the capital stock of Banks Transportation Company held on April 4, 1963, was a good and valid sale and should be in all things ratified and confirmed by this court. That such evidence was in no way controverted by any of the other evidence introduced by plaintiff, defendant or intervenor in the trial of this cause."

Banks, as petitioner in this Court, seeks to have the judgments of the trial court and the Court of Civil Appeals reversed and judgment here rendered for Banks, because Taylor did not show (a) that he made a reasonable effort to obtain the best possible price for the 1200 shares of stock sold under the pledge agreement; (b) that the sale of the 1200 shares of stock as collateral was a good and valid sale; (c) that the sale held was a private sale rather than a public sale; (d) that he or his attorneys made any effort to secure bidders at or to notify the public of the time and place of the sale.

A reading of the collateral pledge agreement sets out what Taylor must do in or-

der to make a valid sale of the 1200 shares of stock.

■ It has been recognized since the case of King & Co. v. Texas Banking & Insurance Co., 58 Tex. 669 (1883), "That parties by contract may regulate in advance the remedy which the creditor must pursue in subjecting property pledged to the payment of the debt which it is hypothecated to secure, cannot be questioned.

"The time, mode and place of sale may be so fixed; and it has been held that the parties may agree that the property may be sold without notice and at a private sale upon default of pledgor to pay the debt."

In the case of Kent v. National Supply Co. of Texas, Tex.Civ.App., 1931, 36 S.W. 2d 811, writ refused, suit was brought by National Supply Company against Kent et al for five pieces of oil field equipment. National Supply claimed title under a valid chattel mortgage sale at which it was the purchaser. The chattel mortgage set out the terms under which a sale could be made and gave authority to the supply company to purchase at such sale. Kent attacked the sale on various grounds. The Court of Civil Appeals, in upholding the sale said:

"* * * Appellee proved affirmatively the execution and record of its mortgages covering the entire property, a sale thereunder, and its purchase at such sale. The presumption is that appellee in this matter followed the law and not that it violated it. Haynes v. Western Union Telegraph Co. (Tex. Com.App.) 231 S.W. 361, 362, par. 2, and authorities there cited. A contention that such sale was invalid and insufficient to reinvest appellee with the title to such machinery must therefore be supported by affirmative proof of some fatal defect therein."

In Smith v. Allbright, Tex.Civ.App., 279 S.W. 852 (1926), aff. 288 S.W. 178 (1926)

in a trespass to try title suit over a tract of land, an attack was made on the sale under a deed of trust because all the requirements of the deed of trust and the law had not been met. One of the parties to the suit claimed title to the land by virtue of having purchased at this trustee's sale. The Court of Civil Appeals said: "It might be well to here state that, since the appellants are not attacking the trustee's deed directly, but collaterally, they can only insist that appellees show the trustee complied with the terms, conditions, and prerequisites imposed upon his power of sale which would render the sale void, if he failed to comply with them." The court reviews the testimony of the trustee making the sale and holds that this evidence shows that the trustee did comply with the terms and provisions of the deed of trust.

In the case of Haynes v. Western Union Telegraph Co. (Tex.Comm.) 231 S.W. 361 (1921), holding approved by the Supreme Court, it is stated:

" 'It is, of course, competent for the parties to agree by express terms that upon the pledgor's default, or upon his failure to keep the security good, the pledgee may sell at public or private sale at his option without giving notice of his intention or the time or place of sale, or upon giving a specified notice of such time and place. * * *' "

Again, quoting from Williams v. Talbot, 27 Tex. 159, 168, 169 (1862), the court said:

" '* * * It is always to be inferred, in the absence of testimony to the contrary, that parties have acted within the scope of their legitimate authority. * * *'

\* \* \* \* \* \*

"There being no presumption that the bank in effecting a foreclosure of its lien by sale of the collateral, acted contrary to law *or exceeded the scope of its legitimate authority,* and there being no evidence to that effect, there

is nothing to show that the sale was not fully binding on plaintiff in error." (Emphasis added.)

The pledge contract or assignment of the stock as collateral was not introduced in evidence. As in our case, the debtor made no effort to redeem the collateral, nor had any pleadings asking that the sale be set aside and the parties returned to the status they occupied prior to the sale.

■ "One questioning the good faith of a sale of the pledge under a power of sale or asserting that the property is worth more than it sold for, has the burden of establishing his contention." 41 Am.Jur. p. 646, § 86; idem p. 651, § 93. See also: 46 Tex.Jur.2d § 21, p. 215; Idem § 25, pp. 220, 221; 72 C.J.S. Pledges § 52c, p. 98; § 59a(1), p. 117 and § 59c, p. 118; § 60c (2) (b), p. 122; § 61b (2), p. 127.

In our case the pledge agreement authorizes sale at private sale; with or without notice or demand of any sort at such place and on such terms as the pledgee may deem best; that the pledgee may become the purchaser at such sale.

The uncontradicted evidence shows that Taylor gave Banks notice of the time and place of sale, and that he had demanded payment of the notes; that he notified Banks to be present with such other persons as might be interested in purchasing the stock; that the sale was held at the time and place set out in the notice and bids called for; that Banks did not see fit to attend; that there was only one bid submitted, and that by Taylor, and the stock was struck off to Taylor.

The trial court did not give judgment against Banks for any amount due on the notes, but did give the notes credit for the $5,000.00 which the stock brought. Taylor did not seek any judgment on the notes against Banks. The evidence in this case shows as a matter of law that Taylor complied with the terms of the collateral agreement regarding his right to sell this collateral stock. There is no pleading or evi-

dence of fraud, misrepresentation or collusion to prevent any and all persons interested from bidding.

Banks, to sustain his contention, relies on the case of King v. D. Sullivan & Co., Tex.Civ.App. (1906), 92 S.W. 51, no writ history. That was a case where Sullivan sued King for balance due on a note secured by deed of trust on certain real estate and personal property. The note being delinquent, Sullivan had the trustee sell the security, and the amount it brought was credited on the note, and the suit was for the balance due on King's note. King filed a cross action seeking damages from Sullivan for falsely causing King to be declared a bankrupt, and also asking for the value of certain vendor's lien notes pledged as security and which King alleged Sullivan had sold for less than their value, and King asked that the excess value of the notes, if any, be credited on Sullivan's claim on the note. That suit is not like our suit, because in our suit Banks did not seek return of the stock, did not tender or offer to pay the two notes and had no pleadings attacking the sale, or claiming the stock sold for an inadequate price.

Banks also relies on King v. Boerne State Bank, Tex.Civ.App. (1913), 159 S.W. 433, writ denied. King sued for the value of 8000 shares of stock pledged to secure his note to the bank. He alleged fraud, misrepresentation and estoppel against the bank's sale of the pledged security; that the bank had sold the security to a third party, and he asked for the value of the stock at the time of the sale. The trial court instructed the jury to return a verdict for the bank. The Court of Civil Appeals held the evidence was sufficient to raise a jury issue that the sale was not made in good faith and with that regard for plaintiff's interest which the law requires. The case was reversed and remanded to try out these issues.

In Reisenberg v. Hankins, Tex.Civ.App. (1924), 258 S.W. 904, dismissed for want of jurisdiction, Hankins sued Reisenberg for a tract of land and to cancel a deed of trust, and to declare a sale held thereunder void. Hankins alleged fraud in making the sale and a conspiracy to hold the sale at a time when no bidders would be present. The trial court made specific finding upholding Hankins' allegations of fraud and conspiracy on the part of Reisenberg and one Minchew. The Court of Civil Appeals affirmed and held that where both parties and the trial court understood that the controlling issue in the trial was one of fraud and the trial was had on that theory, the case must stand or fall on such theory on appeal. The Court of Civil Appeals discusses the evidence and points out that it supports the trial court's findings and affirms the trial court. In the case at bar there are no allegations or proof of fraud.

In the case of Lang v. Harwood, Tex. Civ.App. (1940), 145 S.W.2d 945, no writ history, Judge Alexander writing for the Waco Court of Civil Appeals, in discussing the cases of Haynes v. Western Union Tel. Co., Tex.Comm.App., 231 S.W. 361 (1921), and Kent v. National Supply Co., Tex. Civ.App. (1931), 36 S.W.2d 811, writ refused, recognized the rule announced by the two cases that the presumption would be in favor of a valid sale under the chattel mortgage and that the burden of proof was therefore upon the one attacking the sale to prove that the alleged sale was invalid. The Waco Court pointed out that the rule announced in these two cases applied when the sale was collaterally attacked and not directly attacked. In the Lang case, a suit was brought by the mortgagor—Mrs. Harwood—seeking recovery of the value of the property covered by the mortgage and sold under the mortgage to the mortgagee Lenz. Lenz in turn had sold to Lang.

The Waco Court held that since Mrs. Harwood had been the owner of the property and in possession of the property prior to the sale and her rights had been taken away by the sale, the burden was on the purchaser at the sale to prove a valid chattel

mortgage and a valid sale where suit was brought for recovery of the property. The court held he had not discharged this burden and plaintiff should recover the value of the property sued for, subject to a trial upon defendant Lang's plea that Mrs. Harwood, prior to his purchase of the property from Lenz, had signed and delivered to Lenz an assignment of the property and he had purchased in reliance on this assignment.

Kolbo v. Blair, Tex.Civ.App. (1964), 379 S.W.2d 125, writ refused n.r.e., was a suit to recover a deficiency judgment by note holder against maker. Maker pleaded that the sale of certain personal property under the mortgage securing the debt was invalid and not made in accordance with the terms of the mortgage, nor was any notice of sale given to the mortgagor. The courts held with the maker and the Court of Civil Appeals said: "This power of private sale does not eliminate the necessity of proving the existence of an actual sale nor does *it relieve the mortgagee seeking to obtain a deficiency judgment from proving that the sale was fairly conducted.*" In the case at bar no deficiency judgment was asked for.

Neither of the above four cases is in point in the case at bar. Taylor proved that he complied with the terms of the pledge agreement contained in the notes. The trial court held that the uncontradicted evidence showed that the sale was a good and valid sale as a matter of law. With this holding we agree.

The facts in this case show as a matter of law that a sale was made by Taylor in compliance with the terms of the pledge agreement. Therefore, Taylor was entitled to have the corporation recognize his ownership of the 1200 shares of capital stock and issue to him proper stock certificate, as the trial court's judgment directed.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

CALVERT, C. J., concurs in the result.