**Donald R. BYRD et al., Appellants,**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION, Appellee.**

**No. 6010.**

Court of Civil Appeals of Texas, Waco.

April 12, 1979.

Stephen J. Cavanaugh, Bellaire, for appellants.

Michael Dorman, Liddell, Sapp, Zivley & Brown, Houston, for appellee.

## OPINION

JAMES, Justice.

This suit arises out of the repossession and sale of an automobile. Plaintiff-Appel-lants Donald R. Byrd (hereinafter called, "Byrd Sr.") and Donald R. Byrd II (hereinafter called "Byrd II") brought this action against Defendant-Appellee General Motors Acceptance Corporation (hereinafter called "GMAC") for damages resulting from allegedly improper notification of the sale of their automobile after default, and for allegedly conducting the sale of the repossessed vehicle in a commercially unreasonable manner within the meaning of Section 9.507, Texas Business and Commerce Code.

Plaintiffs, a father and son, originally purchased the car in question, to wit, a 1976 Chevrolet Monte Carlo, from Chuck Davis Chevrolet, Inc. in Houston, Texas, and Defendant GMAC financed it under a Retail Installment Contract dated September 26, 1975. The automobile was repossessed by GMAC on June 8, 1976, and at the time of repossession Plaintiffs were admittedly in default on the Retail Installment Contract for the months of April and May, 1976.

Trial was had to a jury which found (or failed to find, as herein indicated) in answer to special issues as follows:

(1) Failed to find that GMAC did not send notification to Byrd Sr. of the time and place of the public sale of the car on July 2, 1976. In other words, the jury's answer to this issue was, "GMAC did send notification" (to Byrd Sr.).

(2) Failed to find that the notification inquired about in Special Issue No. 1 was unreasonable.

(3) Failed to find that GMAC did not send notification to Byrd II of the time and place of the public sale of the car on July 2, 1976. That is to say, the jury's answer to this issue was, "GMAC did send notification" (to Byrd II).

(4) Found that the notification to Byrd II was unreasonable.

(5) Failed to find that GMAC's disposition of the car was commercially unreasonable.

Defendant GMAC filed a motion for judgment notwithstanding the verdict, asserting the jury's answer to Special Issue No. 4 (that the notification to Byrd II was

unreasonable) should be disregarded, contending there is no evidence to support such finding and the evidence conclusively establishes as a matter of law that the notice sent to Byrd II was reasonable.

The trial court sustained Defendant GMAC's motion for judgment NOV and accordingly entered judgment that Plaintiffs Byrd Sr. and Byrd II take nothing, from which Plaintiffs appeal upon three points of error.

Plaintiff-Appellants contend in their first point of error that the trial court erred in granting Defendant-Appellee's motion for judgment NOV because (they say) there was evidence of probative value to support the jury's answer to Special Issue No. 4. We do not agree. As stated before, on June 8, 1976, GMAC repossessed the car at a time when the monthly payments due on the Retail Installment Contract for the months of April 1976 and May 1976 were in default.

GMAC mailed two notices each to Byrd Sr. and Byrd II, all by letters dated June 18, 1976, one of which letters to Byrd Sr. was by regular mail, postage prepaid, and the other of which was by certified mail, return receipt requested. The same was done insofar as Byrd II was concerned; that is to say, that GMAC likewise mailed one letter to Byrd II by regular mail, postage prepaid, and one by certified mail. The certified letters to Byrd Sr. and Byrd II were couched in the same language, notifying them that it had become necessary to repossess the car, and that they might become liable for a deficiency resulting from the sale of the car, and suggesting that they contact a Mr. Gerald Cooper, an employee of GMAC, to discuss the account. The letters sent by regular mail each to Byrd Sr. and Byrd II were in identical language (except for the addressees), and itemized the charges against the car totalling $5177.85, advising them they could redeem the car by paying this amount anytime prior to the sale, and further informed them that unless the car was sooner redeemed, that it would be sold at public sale at 2 o'clock P.M. on July 2, 1976, at GMAC's office which was shown to be located at 7015 Gulf Freeway, Houston, Texas. Said letter further informed them of the location where the car was stored at that time.

Byrd Sr. and Byrd II both testified that they never received any of the four letters that were sent. However, neither of the two letters sent by regular mail ever came back to GMAC. Although Byrd Sr. testified he never received either the letter sent by regular mail or the certified letter addressed to him, at his address, a return receipt card with his name signed to it was offered in evidence by GMAC showing the letter was delivered to him on June 22, 1976. Byrd Sr. never denied his signature or offered any explanation concerning the return receipt card.

With reference to Byrd II, he testified he never received either the certified letter or the letter sent to him by regular mail. The letter sent to him by regular mail never came back to GMAC. Proof shows the certified letter addressed to Byrd II at his proper address was postmarked June 21, 1976. Moreover, the evidence shows Byrd II was given two notices by the Post Office Department notifying him he had a certified letter, one notice dated June 22, 1976, and the other June 29, 1976, but that he never picked up this letter, and said letter was returned to GMAC with the notation, "unclaimed" on the envelope. Said envelope had a notation, "notified," written on it just above Byrd II's name and address. Byrd II never offered any explanation as to why he never did answer either of the two notices, and never did pick up his certified letter.

The sale of the car was held at the time and place set out in the letters above referred to.

Since the jury found in answer to Special Issue No. 4 that the notification to Byrd II of the public sale was unreasonable, the trial court could properly disregard the jury's answer to Special Issue No. 4 only in the event that the evidence conclusively establishes the contrary to such jury's answer. Therefore, the specific question we must answer is this: Does the evidence

conclusively establish that the notification to Byrd II was reasonable? We believe that it does.

Section 9.504, Texas Business and Commerce Code, obligates a secured party to *send* reasonable notification of the time and place of any public sale of repossessed collateral. This obligation is set forth in the following language of Section 9.504:

"Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale . . . shall be *sent* by the secured party to the debtor . . . . In the case of consumer goods no other notification need be sent." (emphasis supplied).

Section 1.102, Tex.Bus. & Comm.Code, specifically provides that parties may by agreement determine the standards by which performance of the obligation to give "reasonable notice" is to be measured, so long as such standards are not "manifestly unreasonable." *Taylor v. Banks* (Tex.1965) 392 S.W.2d 856.

In the case at bar, the Retail Installment Contract under which the Plaintiffs purchased the subject automobile specifically provides how GMAC's obligation to give "reasonable notification" of the time and place of any public sale shall be satisfied. In the third paragraph of the "Additional Terms" set forth in the Contract, it is specifically provided:

"The requirement of reasonable notification of the time and place of any public or private sale or other intended disposition *shall be met* if notice thereof is *mailed*, postage prepaid, to the buyer and any other person entitled thereto ten (10) days prior to such sale or other disposition of the property." (emphasis supplied).

■ There is no evidence that Defendant GMAC did not comply with the contract. In fact, the evidence conclusively shows that GMAC mailed, postage prepaid, the notices to both Byrd Sr. and Byrd II more than ten days prior to the sale. The uncontradicted evidence established as a matter of law that GMAC complied with the above contractual provisions. Appellants' first point is therefore overruled.

■ Appellants further contend that the jury's answer to Special Issue No. 5 is so against the great weight and preponderance of the evidence as to be manifestly. wrong and unjust, under the rule laid down by our Supreme Court in *In re King's Estate* (Tex.1951) 150 Tex. 662, 244 S.W.2d 660. In answer to Special Issue No. 5, the jury failed to find that GMAC's disposition of the automobile was "commercially unreasonable." We have carefully studied the entire record, and particularly so concerning this point of error, as we are obliged to do; and without detailing the evidence, suffice it to say that the jury's answer to Special Issue No. 5 is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Accordingly, this point of error is overruled.

Appellants have other points and contentions, all of which we have carefully considered, and overrule same as being without merit.

Judgment of the trial court is affirmed.

AFFIRMED.